## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ANTHONY J. STEWART, *et al.*,

    *Plaintiffs*,

v.

ENTERGY CORP.; ENTERGY NEW
ORLEANS, LLC; and ENTERGY
LOUISIANA, LLC,

    *Defendants*.

Civil Action No.

### NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Entergy Corp.; Entergy New Orleans, LLC; and Entergy Louisiana, LLC (collectively, the "Entergy Defendants"), through undersigned counsel, hereby remove the above-captioned action from the Orleans Parish Civil District Court, State of Louisiana, to the U.S. District Court for the Eastern District of Louisiana, pursuant to 28 U.S.C. §§ 1441, 1446, 1452, and 1453.

1.    On September 30, 2021, Plaintiffs Anthony J. Stewart; Diane Raley; Tomika Jordan; Sheena Altine; Tyelga J. Kearney; Phillis Banks; Roslyn Robert; Chrishante Ruffin; Jason C. Tullos; Randolph H. Gonzales, Jr.; 516 St. Philip, LLC; William A. Myers, Jr.; William A. Myers, III; George Alvin Bouie d/b/a Wilson's Shoe Repair, LLC; Vera Warren Williams d/b/a Community Book Center, LLC; James Raley; Colleen Raley; Janet Kalanet; Keith Gelpi; Lexie Keys; Bailey Keys; Larry Guillory; Shelley Guillory; Andrew Cassara; Matador, LLC; We The People, LLC; and Cure, LLC (collectively, the "Plaintiffs"), in Case No. 2021-07365 in the Orleans Parish Civil District Court, State of Louisiana (the "Lawsuit"), filed a First Amended Class Action Petition for Damages (the "Petition") against the Entergy Defendants.

2.      As set forth more fully below, the Lawsuit is properly removed to this Court because the Entergy Defendants have satisfied the procedural requirements for removal and because this Court has subject-matter jurisdiction over the Lawsuit pursuant to 28 U.S.C. §§ 1331, 1332, 1334, and 1337.

**I.      The procedural requirements for removal have been satisfied.**

3.      The Entergy Defendants have not yet been served with the Petition. Accordingly, this Notice of Removal is timely. *See* 28 U.S.C. § 1446(b).

4.      The Orleans Parish Civil District Court is located within the Eastern District of Louisiana. Therefore, venue is proper pursuant to 28 U.S.C. § 98(a) because this is the "district and division within which such action is pending." *See* 28 U.S.C. §§ 1441(a), 1446(a).

5.      All three of the Defendants in the Lawsuit have joined in this filing. *See* 28 U.S.C. § 1446(b)(2).

6.      Pursuant to 28 U.S.C. § 1446(a), 28 U.S.C. § 1447(b), and Local Rule 3.2, copies of all process, pleadings, and orders filed into the state court record are attached as Exhibits 1 through 7.[1] Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for the Plaintiffs, and a copy is being filed with the Clerk of the Orleans Parish Civil District Court, State of Louisiana.

---

[1] The Original Class Action Petition for Damages and Jury Trial Request is attached as Exhibit 1. The First Amended Class Action Petition for Damages and Jury Trial Request is attached as Exhibit 2. The Ex Parte Motion for Appointment of Interim Class Counsel and for Miscellaneous Relief is attached as Exhibit 3. The citation issued for Entergy Louisiana, LLC, is attached as Exhibit 4. The citation issued for Entergy New Orleans, LLC, is attached as Exhibit 5. The citation issued for Entergy Corporation is attached as Exhibit 6. The Defendants' Declinatory and Dilatory Exceptions are attached as Exhibit 7.

II.     **Removal of the Lawsuit is proper because the Plaintiffs' claims present substantial, disputed questions of federal law.**

7.      "A civil suit may be removed from state court to federal court if the claim therein is one 'arising under' federal law, such that it is an action over which a district court would have original jurisdiction." *Hughes v. Chevron Phillips Chemical Co. LP*, 478 F. App'x 167, 170 (5th Cir. 2012). The Plaintiffs attempt to preempt removal of the Lawsuit by alleging in the Petition that "[n]o claim is made under any federal law." *See* Petition at ¶ 117. "However, there are instances where a claim may 'arise under' federal law and be removed to federal court, even though the plaintiff makes no federal claims." *See Hughes*, 478 F. App'x at 170.

8.      Even where a plaintiff's cause of action is created by state law, a federal question exists if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *See Bd. of Comm'rs of Se. La. Flood Protection Auth. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017) (quotation omitted). Accordingly, federal courts have jurisdiction over a state-law claim when "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *See id.* at 721–22 (quotation omitted). Notwithstanding a plaintiff's attempt to "frame his claims as sounding only in state law," federal jurisdiction is not defeated if "any judicial consideration of those claims necessarily implicates substantial questions of federal law." *See Hughes*, 478 F. App'x at 171.

9.      Here, the Plaintiffs' state-law negligence claims (including claims under the theories of strict liability, negligence *per se*, and *res ipsa loquitur*) necessarily turn on substantial, disputed questions of federal law. These claims are premised on the alleged "failure" of the Entergy Defendants' "Transmission System." *See, e.g.*, Petition at ¶¶ 94, 96. As alleged by the Plaintiffs,

"[t]he Entergy Transmission System is a utility system that generates and moves high voltage bulk electric power from generating plants of the Entergy Operating Companies (including Entergy New Orleans, LLC ('ENO') and Entergy Louisiana, LLC ('ELL')) in their system of distribution lines, transmission lines, and substations." *See id.* at ¶ 16. The Plaintiffs further allege that "Entergy's 40 electric power plants are located in 12 states, including Louisiana. The plants produce 30 billion watts of electricity and provide services to 3 million customers in 4 states, including Entergy's home state, Louisiana." *See id.* at ¶ 7. The Plaintiffs allege, among other things, that the Entergy Defendants failed to "properly design, construct, and install [the] Transmission System"; to "inspect [the] Transmission System"; to "maintain and repair [the] Transmission System"; and to "establish proper procedures for inspection and maintenance of the Transmission System." *See* Petition at ¶ 103.

10.     Even without further elaboration, these allegations make clear that the Plaintiffs' claims challenge the Entergy Defendants' planning, construction, operation, and maintenance of a vast, multi-state electric transmission grid. Indeed, the Petition expressly acknowledges that it is concerned with "every asset owned and/or operated by Defendants which, in any respect, serves the residents of Orleans Parish and the East Bank of Jefferson Parish"—not merely infrastructure located in Orleans Parish, Jefferson Parish, or even the State of Louisiana. *See* Petition at 25 (Prayer for Relief). This infrastructure, and the alleged actions challenged by the Plaintiffs, are subject to extensive federal regulation. Pursuant to the Federal Power Act, the Federal Energy Regulatory Commission ("FERC") has jurisdiction over all facilities for the transmission of electric energy in interstate commerce. *See* 16 U.S.C. § 824(b)(1). That jurisdiction is exercised in numerous ways.

11.     One example that is particularly relevant here concerns federal electric reliability standards. "In 2005, Congress . . . enacted legislation requiring the development of mandatory, FERC-approved electric reliability standards." *See Alcoa Inc. v. FERC*, 564 F.3d 1342, 1344 (D.C. Cir. 2009). "To carry out this change, Congress added section 215 to the Federal Power Act (FPA), which provides for the creation of a national Electric Reliability Organization charged with establishing and enforcing such standards." *See id.* The North American Electric Reliability Corporation ("NERC") was subsequently certified by FERC as the nation's Electric Reliability Organization. *See id.* at 1345. Under the statutory scheme, NERC submits its proposed reliability standards to FERC for approval. *See* 16 U.S.C. § 824*o*(d). If approved by FERC, the reliability standards become binding on "[a]ll users, owners and operators of the bulk-power system" and may be enforced through penalties and compliance orders. *See* 16 U.S.C. §§ 824*o*(b)(1), 824*o*(e).[2] The NERC standards currently in force broadly regulate the planning, operation, and maintenance of electric power transmission.[3]

---

[2] The "bulk-power system" is defined to include "facilities and control systems necessary for operating an interconnected electric energy transmission network (or any portion thereof)" and "electric energy from generation facilities needed to maintain transmission system reliability." *See* 16 U.S.C. § 824*o*(a)(1).

[3] To list only a few examples, NERC Standard TOP-001-5 establishes numerous requirements intended to prevent instability and outages in the transmission grid. *See* https://www.nerc.com/pa/Stand/Reliability%20Standards/TOP-001-5.pdf. NERC Standard FAC-003-4 establishes a detailed set of procedures requiring owners of transmission lines to maintain those lines by preventing encroachment by vegetation that could cause outages. *See* https://www.nerc.com/pa/Stand/Reliability%20Standards/FAC-003-4.pdf. NERC Standard PRC-005-1.1b establishes requirements for maintenance and testing of systems protecting electric power transmission. *See* https://www.nerc.com/pa/Stand/Reliability%20Standards/PRC-005-1.1b.pdf. NERC Standard EOP-005-3 establishes required procedures (including testing, training, and simulation exercises) for ensuring restoration of power transmission following an outage using "black start" technology. *See* https://www.nerc.com/pa/Stand/Reliability%20Standards/EOP-005-3.pdf.

12.     Notably, the New Orleans City Council—whose actions concerning the Entergy Defendants are cited throughout the Petition—recently passed a resolution expressly recognizing the federal questions implicated by any investigation of whether the Entergy Defendants' operation and maintenance of transmission lines are responsible for power outages following Hurricane Ida. In Resolution No. R-21-345, the City Council requested that FERC "exercise its regulatory jurisdiction to determine whether [Entergy Louisiana LLC's] transmission line failures resulted from any violations of applicable FERC or NERC reliability standards, or otherwise might affect the interstate transmission of electricity or the bulk power system, including whether the lines were prudently operated and maintained and whether the costs of repairing any imprudently maintained interstate transmission lines should be imposed on transmission customers, all of which are outside of the Council's regulatory authority."[4]

13.     Resolution of federal questions is necessary to resolve the Plaintiffs' negligence claims because federal law, as established through federal statutes and regulations, establishes the standard of care for activities that fall within FERC's jurisdiction—including, as relevant here, planning, operation, and maintenance of facilities for transmission of electric energy in interstate commerce. In *Simmons*, a case involving state-law tort claims arising from the operation of a FERC-regulated hydroelectric dam, the Fifth Circuit explained that "FERC, not state tort law, must set the appropriate duty of care for dam operators." *See Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 476 (5th Cir. 2013). The Fifth Circuit further explained that "[a]pplying state tort law to set the duty of care for the operation of FERC-licenses projects would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the [Federal Power Act]." *See id.* at 477 (quotation omitted).

---

[4] *See* https://cityofno.granicus.com/MetaViewer.php?view_id=&clip_id=3933&meta_id=550733.

14.     The federal questions raised by the Plaintiffs' claims are also actually disputed. To prove their claims, the Plaintiff must prove (among other things) that the Entergy Defendants breached the applicable standards of care defined by federal law.[5] Although the Plaintiffs allege generally that the Entergy Defendants have committed "willful violations of applicable safety standards and statutes," *see* Petition at ¶ 106, the Petition does not allege any specific federal standards that were breached. The Entergy Defendants dispute that they have breached any applicable federal statutory or regulatory standard. The content and application of the relevant federal standards are, and will continue to be, critical, disputed issues.

15.     The federal questions raised by the Plaintiffs' claims are also important "to the federal system as a whole," and therefore "substantial" for purposes of establishing federal jurisdiction. *See Tenn. Gas*, 850 F.3d at 723–24. As recognized by the Federal Power Act, "the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest," which creates a need for federal regulation. *See* 16 U.S.C. § 824(a). Accordingly, transmission of electric energy on the interconnected, interstate grid is subject to extensive federal regulation. The Plaintiffs' broad challenge to the Entergy Defendants' construction, operation, and maintenance of their electric grid implicates actions that affect the supply of electricity of millions of people—an issue that has "broad significance for the federal government." *See Tenn. Gas*, 850 F.3d at 724 (quotation omitted). Moreover, to the extent that state tort law could be allowed to create inconsistent obligations for companies subject to federal

---

[5] To the extent the Plaintiffs would attempt to argue that the Entergy Defendants are liable for negligence despite acting in accordance with all applicable federal standards, their claims would be preempted and subjected to dismissal. *See, e.g.*, *Simmons*, 732 F.3d at 476 (dismissing claims as preempted where the plaintiffs argued "that Defendants were negligent because they failed to act in a manner FERC had expressly declined to require").

regulation, that would have "significant" "implications for the federal regulatory scheme"—to put it mildly. *See id.*

16.     Indeed, the Plaintiffs expressly seek injunctive relief against the Entergy Defendants that would affect "the construction of any new facilities and the maintenance of all every [sic] asset owned and/or operated by Defendants which, in any respect, serves the residents of Orleans Parish and the East Bank of Jefferson Parish." *See* Petition at 25 (Prayer for Relief). Such injunctive relief would require, among other things, "the underground placement of all above ground electric lines." *See id.* It is impossible to overstate the potential for such claims to interfere with the federal regulatory scheme.

17.     Finally, and related to the previous point, exercising federal jurisdiction here will not "disturb the balance of federal and state judicial responsibilities," because regulation of the interconnected, interstate transmission grid has not "traditionally been the domain of state law." *See Tenn. Gas*, 850 F.3d at 722, 724 (quotation omitted).

## III.     Removal of the Lawsuit is also proper pursuant to the Class Action Fairness Act.

18.     The Lawsuit also may be removed to this Court because the Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). "CAFA grants the federal courts original jurisdiction to hear interstate class actions where: (1) the proposed class contains more than 100 members; (2) minimal diversity exists between the parties (*i.e.*, at least one plaintiff and one defendant are from different states); (3) the amount in controversy exceeds $5,000,000; and (4) the primary defendants are not states, state officials, or other governmental entities." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011) (citing 28 U.S.C. § 1332(d)).

19.     The class proposed by the Plaintiffs clearly contains more than 100 members. The proposed class is defined to include "all persons affected by power outages and residing in the

Parishes of [sic] within the service area of the Entergy [sic] who sustained personal, mental, and economic damages, and/or inconvenience as a result of the failure of the Transmission System resulting from Hurricane Ida." *See* Petition at ¶ 113. The Plaintiffs allege that the Entergy Defendants are responsible for "hundreds of thousands of people" being left without power. *See id.* at ¶ 12. The Plaintiffs further allege that "Entergy estimates that there were about 950,000 outages of electrical services after Ida made landfall." *See id.* at ¶ 72.

20.    The "minimal diversity" requirement is also satisfied. Under CAFA, "minimal diversity" means that "(A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." *See* 28 U.S.C. § 1332(d)(2). Entergy Corporation is a Delaware corporation with its principal place of business in New Orleans, Louisiana, and is therefore a citizen of Delaware and of Louisiana. Entergy Louisiana, LLC, and Entergy New Orleans, LLC, are both limited liability companies organized under the laws of Texas with their principal places of business in Louisiana; both companies are therefore citizens of Texas and of Louisiana.[6]

21.    As to the citizenship of the putative class members, the Petition sheds little light. Once again, the proposed class is defined to include "all persons affected by power outages and residing in the Parishes of [sic] within the service area of the Entergy [sic] who sustained personal, mental, and economic damages, and/or inconvenience as a result of the failure of the Transmission System resulting from Hurricane Ida." *See* Petition at ¶ 113. The area served by Entergy

---

[6] For purposes of jurisdiction under CAFA, an unincorporated association is considered a citizen "of the State where it has its principal place of business and the State under whose laws it is organized." *See* 28 U.S.C. § 1332(d)(10).

Corporation's subsidiaries extends beyond Louisiana, and power outages as a result of Hurricane Ida occurred in states other than Louisiana (such as Mississippi). And even if the proposed class definition is interpreted to encompass only residents of Louisiana, "an allegation of residency alone does not satisfy the requirement of an allegation of citizenship," because the two "are not synonymous terms." *See MidCap Media Finance LLC v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (quotation omitted). The set of all persons who reside within the area in Louisiana served by Entergy Corporation's subsidiaries and who were affected by power outages resulting from Hurricane Ida would indisputably include at least one person who is not a citizen of Louisiana, Texas, or Delaware. To list just one example, the persons affected by the power outage obviously include at least one student attending a Louisiana college while maintaining his or her domicile outside of Louisiana. *See, e.g.*, *Rey v. LCMC Healthcare Partners, LLC*, No. 21-cv-1188, 2021 WL 3674358, at *4 (E.D. La. Aug. 19, 2021) (noting the "transient" nature of the population around Children's Hospital in uptown New Orleans, making it "inappropriate" to assume that persons living there are domiciled in Louisiana"). Finally, the Petition also makes clear that the putative class includes supposed "third-party beneficiaries" who are not even customers of the Entergy Defendants. *See* Petition at ¶ 13. Considering these facts, and the sheer number of putative class members, it is clear beyond any reasonable doubt that the minimal diversity requirement is satisfied.

22.     Separate from the allegations setting forth the class definition, the Petition argues: "Excluded from the Class are . . . . any person or business that is not domiciled in the State of Louisiana, so as to maintain jurisdiction and venue in state court of Louisiana." *See* Petition at ¶ 119(e). The Plaintiffs cannot insulate themselves from CAFA, however, by including legal

arguments in their pleadings.[7] Moreover, even if the putative class were limited to persons or businesses domiciled in Louisiana, minimal diversity would not be defeated. CAFA extends jurisdiction to cases in which "any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State." *See* 28 U.S.C. § 1332(d)(2)(B). The set of all persons who reside within the area in Louisiana served by Entergy Corporation's subsidiaries and who were affected by power outages resulting from Hurricane Ida would indisputably include at least one person who is a "citizen or subject of a foreign state" despite being domiciled in Louisiana. *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State.").

23.     The jurisdictional amount-in-controversy requirement is also met. Under CAFA, the claims of all members of a proposed class are aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Once again, the Plaintiffs allege that "hundreds of thousands of people" were left without power due to the negligence of the Entergy Defendants. *See* Petition at ¶ 12. The Plaintiffs also allege that the putative class members "have suffered significant damages" as a result of the Entergy Defendants' alleged actions, including property damage, physical injury, emotional distress, and wrongful death. *See* Petition at ¶ 94. Considering the number of putative class members and the nature and extent of their alleged damages, it is clear that the Petition seeks an aggregate judgment of more

---

[7] *See, e.g.*, *King v. Safeway, Inc.*, No. C-08-0999 MMC, 2008 WL 1808545, at *1 (N.D. Cal. Apr. 22, 2008) ("Contrary to plaintiff's argument, plaintiff's allegation that the instant action is not subject to removal under [CAFA] 'because the members of the Plaintiff Class are citizens of the same state, California, as Defendant,' does not serve to further limit or define the class; rather, as defendant points out, such allegation constitutes plaintiff's legal 'interpretation' of the class definition, which interpretation, as set forth above, the Court has declined to adopt.") (internal record citations omitted).

than $5,000,000. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.").

24.     Finally, none of the three Defendants in this case is a state, a state official, or a governmental entity.

**IV.     Removal of the Lawsuit is also proper because the claims implicate core proceedings under the Court's bankruptcy jurisdiction.**

25.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(b) because the Plaintiffs' claims implicate core proceedings under the Court's bankruptcy jurisdiction. Accordingly, removal is proper under 28 U.S.C. § 1452.

26.     On September 23, 2005, following extensive damage and power outages caused by Hurricane Katrina, Entergy New Orleans, Inc. ("ENOI"), the predecessor-in-interest to Entergy New Orleans, LLC ("ENO"),[8] filed for relief under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of Louisiana. *See In re Entergy New Orleans, Inc.*, No. 05-17697 (Bankr. E.D. La. 2005) (the "*ENOI Bankruptcy*") (Doc. No. 1).

27.     ENOI filed its Fourth Amended Chapter 11 Plan of Reorganization (the "Debtor's Plan"), which was confirmed by the Bankruptcy Court and became effective on May 8, 2007. *See ENOI Bankruptcy* (Doc. Nos. 1962, 1990, 2008). With certain specified exceptions, the confirmation of the Debtor's Plan resulted in "complete satisfaction, discharge and release of all

---

[8] In November 2017, Entergy New Orleans Power, LLC, merged with and became a successor-in-interest to ENOI. *See ENOI Bankruptcy* (Doc. No. 2369 at 11; Doc. No. 2369-2; Doc. No. 2369-3). In December 2017, Entergy New Orleans Power, LLC, changed its name to Entergy New Orleans, LLC. *See ENOI Bankruptcy* (Doc. No. 2369 at 11).

Claims arising on or before the Effective Date." *See id.* at 7. The confirmation order further provides that "such discharge will void any judgment obtained against the Debtor at any time to the extent that such judgment relates to a discharged Claim." *See id.* at 7–8.

28. Additionally, after the Effective Date, ENOI continued to exist as the "Reorganized Debtor," with its retained property being "free and clear of all Claims, Liens, charges, [and] other encumbrances." *See ENOI Bankruptcy* (Doc. No. 1990 at 9). The confirmation order also adopted injunction provisions generally barring holders of discharged claims from filing lawsuits to enforce such claims. *See ENOI Bankruptcy* (Doc. No. 1990 at 8; Doc. No. 1990-1 at 53–54).

29. Even after a bankruptcy estate is closed, federal jurisdiction under 28 U.S.C. § 1334 continues as to proceedings that "arise under" title 11. *See In re Bradley*, 989 F.2d 802, 804 (5th Cir. 1993). "Courts have held that actions to enforce the discharge injunction are core proceedings" that "arise under" title 11 and establish federal jurisdiction. *See In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063–64 (5th Cir. 1997); *see also In re Galaz*, 841 F.3d 316, 322–23 (5th Cir. 2016) (holding that the alleged violation of the bankruptcy court's discharge order through a subsequent state-court lawsuit "directly implicat[ed] the bankruptcy court's 'arising under' jurisdiction" and therefore gave rise to federal subject-matter jurisdiction). Thus, "a debtor may remove a case, pursuant to 28 U.S.C. § 1452, based on the need to determine whether a particular debt has been discharged." *Rhodes Life Ins. Co. v. Mendy Properties, LC*, No. 08-cv-4953, 2009 WL 1212476, at *3 (E.D. La. Apr. 30, 2009) (footnote omitted).

30. The Petition makes clear that the Plaintiffs seek to hold the Entergy Defendants, including ENO, liable for alleged negligence going back long before ENO's 2007 bankruptcy discharge. The Plaintiffs broadly challenge the Entergy Defendants' alleged failure "to properly design, construct, and install" a vast electric power transmission system that has existed for many

decades. *See* Petition at ¶ 103. The Petition alleges that the Entergy Defendants have been the sole providers of electric power to people across Southeast Louisiana "for decades." *See id.* at ¶ 13. The Plaintiffs' claims are based on actions allegedly taken by the Entergy Defendants when they "first chose to apply for and become the sole power provider in 53 Parishes." *See id.* at ¶ 9. The Plaintiffs' claims are also based on actions allegedly taken, and decisions allegedly made, by the Entergy Defendants in "creat[ing]" their electric power system. *See id.* at ¶ 11. The Petition also specifically refers to Hurricanes Katrina and Rita in 2005, and to actions allegedly taken by the Entergy Defendants in connection with and in response to these hurricanes. *See id.* at ¶¶ 51, 53–54. The Petition also refers to the Entergy Defendants' alleged actions (and alleged shortcomings) in "hardening" their transmission systems beginning in the 1960s. *See id.* at ¶ 56.

31.     Because the Plaintiffs seek to hold ENO liable for claims that were discharged in bankruptcy, removal to enforce the Bankruptcy Court's discharged order and injunction is proper.

WHEREFORE, as set forth more fully above, the Entergy Defendants hereby remove the Lawsuit from the Orleans Parish Civil District Court, State of Louisiana, to this Court.

Respectfully submitted,

 */s/ Matthew J. Paul*
Richard C. Stanley, 8487, T.A.
Eva J. Dossier, 35753
Matthew J. Paul, 37004
John P. D'Avello, 39082
STANLEY, REUTER, ROSS, THORNTON
   & ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
rcs@stanleyreuter.com
ejd@stanleyreuter.com
mjp@stanleyreuter.com
jpd@stanleyreuter.com

Darryl M. Phillips, 19736
Cory R. Cahn, 22984
ENTERGY SERVICES, LLC
639 Loyola Avenue, Suite 2600
New Orleans, Louisiana 70113
Telephone: (504) 576-5437
Facsimile:  (281) 297-5351
dphil10@entergy.com
ccahn@entergy.com

*Counsel for Entergy Corp.; Entergy New Orleans, LLC; and Entergy Louisiana, LLC*