**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**DOCKET NO. 2021-07365     SECTION: 5     DIVISION: B**

**ANTHONY J. STEWART, DIANE RALEY, TOMIKA JORDAN, SHEENA ALTINE, TYELGA J. KEARNEY, PHYLLIS BANKS, ROSLYN ROBERT, CHRISHANTE RUFFIN, JASON C. TULLOS, RANDOLPH H. GONZALES, JR., 516 ST. PHILIP, LLC, WILLIAM A MYERS, JR., WILLIAM A MYERS, III., GEORGE ALVIN BOUIE d/b/a WILSON'S SHOE REPAIR, LLC, VERA WARREN WILLIAMS d/b/a COMMUNITY BOOK CENTER, LLC, JAMES RALEY, COLLEEN RALEY, JANET KALANET, KEITH GELPI, LEXIE KEYS, BAILEY KEYS, LARRY GUILLORY, SHELLEY GUILLORY, ANDREW CASSARA, MATADOR, LLC, WE THE PEOPLE, LLC, CURE, LLC, AND ALL OTHER SIMILARLY AFFECTED INDIVIDUALS AND ENTITIES**

v.

**ENTERGY CORP., ENTERGY NEW ORLEANS, LLC, and ENTERGY LOUISIANA, LLC**

FILED: _____     _____

                                                            **DEPUTY CLERK**

**FIRST AMENDED CLASS ACTION PETITION FOR DAMAGES
AND JURY TRIAL REQUEST**

NOW COMES, Petitioners-Plaintiffs, individually and as putative class representatives, Anthony J. Stewart, Diane Raley, Tomika Jordan, Sheena Altine, Tyelga J. Kearney, Phyllis Banks, Roslyn Robert, Chrishante Ruffin, Jason C. Tullos, Randolph H. Gonzalez, Jr., 516 St. Philip, LLC, William A. Myers, Jr., William A. Myers, III, George Alvin Bouie d/b/a Wilson's Shoe Repair, LLC, Vera Warren Williams d/b/a Community Book Center, LLC, James Ralley, Colleen Raley, Janet Kalanet, Keith Gelpi, Lexie Keys, Bailey Keys, Larry Guillory, Shelley Guillory, Andrew Cassara, Matador, LLC, We The People, LLC, Cure, LLC, and all other affected individuals and entities by and through undersigned counsel, who respectfully file this First Amended Class Action Petition for Damages. Plaintiffs allege as follows: Entergy Corp., Entergy New Orleans, LLC, and Entergy Louisiana, LLC, (hereinafter in this Petition referred to as "Entergy"), a single business enterprise, made defendants herein, are liable to Petitioners for the damages they sustained, and are still sustaining, as a result of Entergy's negligence and other breaches, which caused a system failure that left southeast Louisiana without power. Some areas are still without at the time of this filing. The power outage occurred as a direct result of the foreseeable failure of Entergy's distribution and transmission equipment and systems during Hurricane Ida because despite evidence which demonstrated the weakness and perilous condition

1

EXHIBIT
2

VERIFIED
Yanley Salazar
2021 OCT 01  A 11:36

E-Filed

FILED
2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

of their equipment and systems, all of which was well known to Entergy. Entergy chose profits over the people they serve.

## JURISDICTION

1.

This Court has jurisdiction pursuant to the Louisiana Code of Civil Procedure articles 6(A) and 591 *et seq.*

## PARTIES

2.

Petitioners bring this action on their own behalf and on behalf of others similarly situated in the respects hereinbelow stated.

3.

### Orleans Parish Property Owners/Lessees/Occupants

a. Petitioner, **Anthony J. Stewart**, is a person of full age of majority, domiciled in the Parish of Orleans, State of Louisiana.

b. Petitioner, **Tomika Jordan**, is a person of full age of majority, domiciled in the Parish of Orleans, State of Louisiana.

c. Petitioner, **Sheena Altine**, is a person of full age of majority, domiciled in the Parish of Orleans, State of Louisiana.

d. Petitioner, **Roslyn Robert**, is a person of full age of majority, domiciled in the Parish of Orleans, State of Louisiana.

e. Petitioner, **Phyllis Banks**, is a person of full age of majority, domiciled in the Parish of Orleans, State of Louisiana.

f. Petitioner, **516 St. Philip, LLC** is a Louisiana limited liability company licensed to do and doing business in the State of Louisiana, with its principal place of business in Orleans Parish.

g. Petitioner **William A. Myers, Jr.,** is a person of full age of majority, domiciled in the Parish of Orleans, State of Louisiana

h. Petitioner **George Alvin Bouie d/b/a Wilson's Shoe Repair, LLC** is a Louisiana limited liability company licensed to do and doing business in the State of Louisiana, with its principal place of business in Orleans Parish.

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

i.  Petitioner **Vera Warren Williams d/b/a Community Book Center, LLC** is a Louisiana limited liability company licensed to do and doing business in the State of Louisiana, with its principal place of business in Orleans Parish.

j.  Petitioner, **James Raley,** is a person of full age of majority, domiciled in the Parish of Orleans, State of Louisiana.

k.  Petitioner, **Colleen Raley,** is a person of full age of majority, domiciled in the Parish of Orleans, State of Louisiana.

l.  Petitioner, **Janet Kalanet,** is a person of full age of majority, domiciled in the Parish of Orleans, State of Louisiana.

m.  Petitioner **Matador, LLC d/b/a Val's,** is a Louisiana limited liability company licensed to do and doing business in the State of Louisiana, with its principal place of business in Orleans Parish.

n.  Petitioner **We The People, LLC d/b/a Cain and Table,** is a Louisiana limited liability company licensed to do and doing business in the State of Louisiana, with its principal place of business in Orleans Parish.

o.  Petitioner **Cure, LLC d/b/a Cure,** is a Louisiana limited liability company licensed to do and doing business in the State of Louisiana, with its principal place of business in Orleans Parish.

4.

### Jefferson Parish Property Owners/Lessees/Occupants

a.  Petitioner, **Tyelga J. Kearney**, is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

b.  Petitioner, **Diane Raley,** is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

c.  Petitioner, **Jason C. Tullos**, is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

d.  Petitioner, **Randolph H. Gonzales, Jr**., is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

e.  Petitioner, **Chrishante Ruffin,** is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

3

2021 SEP 30 P 09:40

CIVIL

DISTRICT COURT

    f.  Petitioner, **William A. Myers, III,** is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana

    g.  Petitioner, **Keith Gelpi,** is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

    h.  Petitioner, **Lexie Keys,** is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

    i.  Petitioner, **Bailey Keys,** is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

    j.  Petitioner, **Larry Guillory,** is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

    k.  Petitioner, **Shelley Guillory,** is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

    l.  Petitioner, **Andrew Cassara,** is a person of full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

5.

Made defendants are the following parties:

    **a. Entergy Corp.**, a Louisiana Corporation licensed to do and doing business in the State of Louisiana, with its principal business office at 639 Loyola Ave., New Orleans, LA 70113, and with its registered agent, Marcus V. Brown, 639 Loyola Ave., 28th Floor, New Orleans, LA 70113.

    **b. Entergy New Orleans, LLC**, a Louisiana Corporation licensed to do and doing business in the State of Louisiana, with its principal business office at 1600 Perdido St., New Orleans, LA 70112, with its registered agent Marcus V. Brown, 639 Loyola Ave., 28th Floor, New Orleans, LA 70113.

    **c. Entergy Louisiana, LLC**, a Louisiana Corporation licensed to do and doing business in the State of Louisiana, with its principal business office at 4809 Jefferson Hwy, Jefferson, LA 70121, and with its registered agent John A. Braymer, 446 North Blvd., Baton Rouge, LA 70802.

4

**VENUE**

6.

This Court has venue pursuant to Louisiana Code of Civil Procedure article 42(2) because two of the defendants have their principal place of business in this Parish. Venue is also proper pursuant to La. Code of Civil Procedure art. 73(a) because the defendants are solidary obligors. Further, on information and belief, the conduct and decisions made resulting in the damages claimed occurred in this Parish, making venue proper under La. Code of Civil Procedure art. 74.

7.

**THE STORY**

Entergy is a holding company founded in 1913. It provides power to the citizenry it serves. Entergy's 40 electric power plants are located in 12 states, including Louisiana. The plants produce 30 billion watts of electricity and provide services to 3 million customers in 4 states, including Entergy's home state, Louisiana. Entergy provides electric service to 1.1 million Louisiana customers, or almost 25% of Louisiana's entire population, in 53 of 64 parishes, over a geographic area of 114 thousand square miles, an area larger than all but 5 states in the United States of America.

8.

Entergy is a member of the exclusive Fortune 500 club, being larger than U.S. Steel, Norfolk Southern Railway, and the Coors Beverage Corporation, with a total of $50,000,000,000 in assets and an annual income of $11,000,000,000.

9.

When Entergy first chose to apply for and become the sole power provider in 53 Parishes, it was well aware that it was going to be responsible for maintaining a system and its components, and that the system and its components would be required to sustain repeated exposure to extreme weather conditions, and also that the entirety of their transmission system would on occasion be severely tested by weather. In the process of securing and maintaining the privilege of having the exclusive right to service these customers, Entergy repeatedly assured the State and other public entities that it was up to the job. This job of providing reliable energy would have to face numerous and regular tropical storms and hurricanes. To accomplish this, the equipment, poles, lines, and transmission equipment would require that it be well-maintained and regularly surveyed

5

2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

(repaired/replaced) for any possible conditions that could plummet Louisiana into darkness and idle the functioning of other necessary systems, such as pumps and sewerage.

10.

Historically, Louisiana has faced at least two tropical storms every three years and one full blown hurricane every 2.8 years. However, Entergy, along with most of the world, has become aware that the climate of the world (including southeast Louisiana) is changing, and not for the better. In 2020, alone Louisiana faced four category 2 to 4 hurricanes, and one severe tropical storm. Entergy also knows that besides the wind events, Louisiana experienced more severe periods of heat and flooding. Entergy's job is to protect the delivery of their product (electricity), a job that, because of its government monopoly and lack of competition, requires regular and keen diligence on its part. Where Entergy has many choices on how to conduct its business, and most especially its decision to service southeast Louisiana, Petitioners have no choice, they must accept what Entergy delivers.

11.

In the case of Hurricane Ida, Entergy, through its grossly inadequate maintenance and inspection program, failed miserably in that obligation by using antiquated equipment, shoddy maintenance, and lies to the City, the State, and its customers. Entergy created a system that could not and would not sustain even a hurricane with wind gusts below 100 miles per hour. Entergy made the decision to not invest in the underground transmission of electricity, which in an environment like Southeast Louisiana could have assured regular, consistent, and sustained protected service to all their customers, and not just in affluent neighborhoods. This is a common method used in Europe and parts of Australia. Instead, Entergy chose the bubble gum and super glue approach to protect its billions of dollars instead of its customers. These customers pay Entergy every month in order to avoid having to live without electricity. That is, instead of asking its customers for billions of dollars for restoration and hurricane response, it could have invested that money in hardening the systems.

12.

Entergy's greed and lies set the foreseeable stage for hundreds of thousands of people to be left without refrigeration, air conditioning, and in many cases sewerage disposal. Entergy's negligence also led to thousands of people not only sitting without lights but unable to learn what the storm and electric failure wrought. Thousands of people suffered and suffer unnecessarily

6

because of Entergy's failure to do what they promised to do. As Louisiana Civil Code article 2315 provides "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

## FACTS

### Entergy what it is and what it is responsible for

13.

On information and belief, Entergy is the sole provider of electricity transmissions to Petitioners and others similarly situated throughout Southeast Louisiana and has provided electricity for decades. Entergy has contracts or implied contracts with its customers which are subject to regulation by the Public Service Commission and the City of New Orleans, and it owes duties to those customers and also to third-party beneficiaries (stipulations *pour autri*) to these contracts or implied contracts, (*i.e.,* residents of hospitals, healthcare facilities, nursing homes, and other residents who are not the named individual on the Entergy billing statements).

14.

Entergy designed and constructed, and owns and operates, the Entergy transmission system (the "Transmission System") that provides electricity to Southeast Louisiana.

15.

The Transmission System generates and delivers power to citizens, businesses, government agencies, healthcare facilities, universities, and others.

16.

The Entergy Transmission System is a utility system that generates and moves high voltage bulk electric power from generating plants of the Entergy Operating Companies (including Entergy New Orleans, LLC ("ENO") and Entergy Louisiana, LLC ("ELL")) in their system of distribution lines, transmission lines, and substations.

17.

Entergy Corp. wholly owns a number of subsidiary companies, including ENO and ELL, which are businesses designed to profit from, inter alia, the provision, transmission, sale, and trading of electricity, as well as fuel used to generate electricity. As the corporate parent, Entergy Corp. has, and exercises, control over all aspects of the Transmission System. Entergy Corp. also exercises complete domination and control over ENO and ELL's management, finances, policy,

7

2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

and business practices, including the provision of and purchase, sale, and resale of electricity rendering ENO and ELL under the control of Entergy Corp.

18.

ELL was formed by a 2015 merger of Entergy Gulf States Louisiana, LLC and Entergy Louisiana, LLC.

19.

All of ELL and ENO's common LLC interests are owned by Entergy Utility Holding Company, LLC, an intermediate holding company, all of whose common LLC interests are owned, directly or indirectly, by Entergy Corp.

20.

Entergy Corp. also owns all of the common stock of Entergy Services, LLC.

21.

As a result of numerous interlocking directorships and office holdings, Entergy Corp., the parent company, through its officers and directors, completely controls and dominates ENO and ELL's operations, management, budget, financing, policy, and business decisions. ENO and ELL are under the sole control of Entergy Corp. Entergy Corp. has working control over ENO and ELL.

22.

ENO and ELL's officers and directors are also officers and directors of the parent corporation and each other. For example, key executives and directors of Entergy Corp. also manage and direct ENO and ELL, including Roderick West (Group President, Utility Operations of Entergy Corp., who is Director of ELL and Chairman, President, CEO, Utility Operations, and Director of ENO); Andrew Marsh (Executive Vice-President and CFO of Entergy Corp., and Executive Vice-President, CFO, and Director of ELL and Director of ENO); and Paul Hinnenkamp (Executive Vice-President and COO of Entergy Corp. and Director of ELL and Director of ENO).

23.

Entergy Corp.'s domination and control of ENO and ELL has caused ENO and ELL to not be operated as separate entities, and instead to be operated as an alter ego and agent. They have been found to be a single business enterprise and should be treated as such as to all legal obligations and duties.

8

24.

Tax documents filed by Entergy Corp., ENO, and ELL, as well as Entergy's website and other Entergy documents confirm that all three have headquarters and principal places of business in Louisiana.

25.

Entergy Corp.'s bylaws indicate that its principal business office shall be in New Orleans, Louisiana.

26.

ELL's Company Agreement indicates that its principal place of business is in Jefferson, Louisiana.

27.

ENO's Company Agreement indicates that its principal place of business is in New Orleans, Louisiana.

28.

Entergy Corp.'s control and oversight of ENO and ELL was performed negligently, leading to the damages at issue in this lawsuit.

29.

ELL serves over one million electric and gas customers in 58 Louisiana parishes.

30.

ENO is an electric and gas utility serving Orleans Parish.

31.

ENO's slogan is "keep the lights on and the gas flowing."

32.

As of 2013, ENO has had about 6,000 direct and indirect employees in the New Orleans area.

33.

As of about 2013, ELL has had about 4,500 employees in Louisiana.

34.

Entergy's Code of Ethics provides that Entergy Representatives shall comply with all laws, rules, and regulations. The purpose of the code is to, in part, foster a culture of honesty, accountability, and mutual respect. The Code notes that Entergy Representatives have a

9

responsibility to act honestly and transparently with customers and to treat customers with fairness and respect.

35.

Entergy's Code of Ethics does not mention the public good, public safety, or public health.

36.

Until 2015, transactions among ENO and ELL were governed by a System Agreement, which sought to iron out inequities among the Entergy Corp. operating companies through "equalization payments." The System Agreement governed energy exchange transactions between the Entergy Operating Companies, providing the basis for planning and operating generation and bulk transmission facilities on an integrated, single-system basis. It also traditionally provided for the joint planning and sharing of transmission and generation infrastructure and related costs. The System Agreement was administered by an Operating Committee that included the operating companies' CEOs and Entergy Corp.'s CEO. Entergy Corp., through its CEO, had the highest percent of vote for the Operating Committee.

37.

The System Agreement was terminated in 2016.

38.

The Entergy system, including Entergy Corp., ENO, and ELL, were and are highly integrated, with the transmission and generation facilities operated as a single electric system. The System Agreement helped ensure that the operating companies were operated as a single, integrated, and coordinated system.

39.

Entergy operating companies, including ENO and ELL, jointly own certain transmission control centers, which are governed by a Joint Ownership and Operating Agreement. The control centers are operated and maintained by Entergy Services, LLC. Entergy Services, LLC operates pursuant to centralized service company agreements with ENO and ELL.

40.

Entergy has internal standards which guide its decision on how to design and build its structures, namely, the Entergy Design Standards for site design.

10

FILED
2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

41.

Entergy has spent a disproportionate amount of its resources generating its own electricity rather than operating, maintaining, and fortifying the transmission grid. This is not typical within the industry. Entergy does this in an effort to maximize profits at the expense of protecting Louisiana residents.

42.

Since about 2016, it has continued to obstruct, and try to delay and stop regional planning so that regional lines do not get built.

**The Laws, Regulations, and Rules Entergy Must Abide**

43.

Entergy is subject to the rules and regulations of the Louisiana Public Service Commission and the City of New Orleans, among other state and local entities and agencies.

44.

"The avowed purpose of the NESC is to provide basic guidelines for safeguarding persons from hazards arising from the installation, operation, or maintenance of overhead electric supply lines, and its requirements reflect the minimum provisions considered necessary for the safety of employees and the public." *Foley v. Entergy La., Inc.*, 06-0983 (La. 11/29/06), 946 So. 2d 144, 159.

45.

Standards within the applicable edition of the Department of Transportation and Development standards also apply to Entergy.

46.

Entergy is also mandated to adhere to local standards, including but not limited to:

a) City Ordinance 158-892 ("Repairs to be made") provides that "All companies shall make necessary repairs to their lines of conductors. The permit to make such repairs does not, however, cover the erection in any street, alley or public place of any additional poles, wires, fixtures or similar structures."

b) City Ordinance Chapter 158, Division 2, at Section 158-1044, et seq. is the "Bill of Rights" that provides ratepayers with certain rights. This includes the "right to safe and reliable service in accordance with industry standards." See Section 158-1045.

11

47.

Entergy is also bound by several provisions of the Louisiana Civil Code including but not limited to articles 2315, 2317, and 2322.

**Entergy was on Notice of Serious Systemic Deficiencies in its Systems**

48.

After the devastating 2005 and 2008 hurricane seasons, in 2010, the U.S. Department of Energy, issued a study ("Hardening and Resiliency: U.S. Energy Industry Response to Recent Hurricane Seasons"). The study focused on "aging infrastructure and hurricane hazards." The study noted that "aging infrastructure is more susceptible than newer assets to the hurricane-related hazards" of, for example, "extreme winds." The study noted that electric utilities have invested in construction projects, but that the investments "are limited by comparison with the level of effort required for wind protection."

49.

This 2010 study was directed in part to Entergy's transmission system in Southeast Louisiana and put Entergy on notice of the susceptibility and likelihood of their equipment to fail.

50.

According to the Washington Post (8/31/2021), "ENTERGY, the power provider for 3 million customers in the Gulf region, has over the past decade been fined for deferring maintenance of its aging infrastructure and criticized for moving too slowly to reinforce its grid against severe weather. The company resisted calls to increase investments in renewable energy sources, which climate advocates see as a way to prevent widespread outages." https://www.washingtonpost.com/business/2021/08/31/ida-entergy-hurricane-louisiana-power/

51.

In 2007 and in direct response to the 2005 Hurricanes Katrina and Rita, Entergy performed a "Hardening Study." This study provided Entergy sufficient information needed to develop strategies to harden its infrastructure for Southeast Louisiana.

52.

Hardening refers to physically changing the infrastructure to make it less susceptible to damage from extreme wind, flooding, or flying debris. Hardening improves the durability and stability of energy infrastructure, making it better able to withstand the impacts of hurricanes and weather events without sustaining major damage. Resiliency, by contrast, refers to the ability of

12

an energy facility to recover quickly from damage to any of its components or to any of the external systems on which it depends. Resiliency measures do not prevent damage; rather they enable energy systems to continue operating despite damage and/or promote a rapid return to normal operations when damages/outages do occur.

53.

The 2007 Hardening Study also showed Entergy that it needed to support coastal transmission lines with concrete and steel poles, rather than wood poles[1].

54.

On information and belief, Entergy did not comply with its 2007 Hardening Study.

55.

On September 9, 2021, Entergy CEO Phillip May, publicly warranted and assured the state categorically that newly built and restored towers and wires and strengthened substations are engineered          to          withstand          150          mph          winds. https://www.wwltv.com/article/news/investigations/david-hammer/regulators-question-entergys-transmission-upgrades-after-catastrophic-failure/289-757c5b6d-fa64-4c65-9015-bdce5cbc1fd0

56.

According to a 2016 Entergy "Resilience Plan", Entergy began "hardening" transmission lines against storms in the 1960s. Also, Entergy allegedly reinforced equipment to withstand winds of up to 140 mph, the speed of Hurricane Betsy's strongest winds, which Entergy noted is "well beyond the National Electrical Safety Code (NESC) requirements." The study noted that "Entergy's primary acute vulnerability is to extreme weather events that result in outages." However, Entergy had no adequate redundancy system capable of rerouting electricity effectively and immediately.

57.

According to the 2016 Resilience Plan, "During the design phase, wind loading on structures is in accordance with IBC (International Building Code) and ASCE 7 (American Society of Civil Engineering—Minimum Design Loads for Buildings and other structures) standards. ASCE 7 provides users with site-specific wind speeds used in the determination of the design of wind loads for the buildings and structures. ASCE 7 also addresses design loads for seismic, rain,

---

[1] The study was particularly critical of the high-capacity tower

13

FILED
2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

and ice impacts. The IBC addresses the design and installation of building systems and provides regulations that safeguard the public health and safety in all communities, large and small."

58.

In 2015, a decade after Katrina, the New Orleans City Council complained that Entergy had yet to provide the Council with "a comprehensive, detailed storm hardening plan," including detailed costs, a timeline, and benefits.

59.

Entergy recently cut $150 million in "O&M" (Operations and Maintenance) expenses, which includes, among other things, poles, and upkeep of substations.

60.

During a 2018 City Council meeting, an Entergy executive admitted to deliberately reducing the company's investment in the power grid by about $1 million, because, she said, the company was seeing strong performance and "we didn't want to spend money on a system that was performing extremely well," according to notes included in a City Council report.

61.

According to the City Council report, the "slight drop" in funding was responsible for an increase in customer power outages from 2013 to 2017. In 2019, the City fined Entergy $1 million after finding that it had failed to properly maintain electricity poles and wires following a series of power failures from 2014 to 2017 and asked it to increase investments in the grid.

62.

In 2018, Entergy revealed that broken equipment caused between 73 and 81 percent of power outages in each of the past five years. Those outages followed Entergy's 2013 decision to raid $1 million from a pool of money slotted for repairs, which Entergy vice president for customer service Melonie Stewart indicated was because the distribution system at that time was "outstanding." Ms. Stewart said, "We didn't want to spend money on a system that was performing extremely well." "But as we backed off from that funding, we did see the reliability go in the wrong direction."

63.

Before Hurricane Ida hit Southeast Louisiana, it was Entergy's position that its systems, which provided power to 1.1 million residents and businesses, could withstand winds of 150 mph. Entergy was wrong in this opinion and the studies presented to it and studies in which it

14

FILED
2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

participated. These studies provided sufficient information for Entergy to know and understand that its beliefs about the strength of its system and its component parts would likely fail at wind speeds significantly lower than 150 mph.

## Hurricane Ida

64.

Hurricane Ida was first monitored as a storm by the National Hurricane Center on August 23, 2021.

65.

On August 26, 2021, it became known as Tropical Depression Nine.

66.

On August 26, 2021, it morphed into Tropical Storm Ida.

67.

On August 27, 2021, it strengthened into Hurricane Ida ("Ida").

68.

On August 28, 2021, Ida underwent a rapid intensification due to warm sea surface temperatures.

69.

On August 29, 2021, Ida made landfall near Port Fourchon, Louisiana.

70.

The weather station at Louis Armstrong International Airport in New Orleans reported a sustained wind speed of 64 mph and a wind gust of 90 mph.

71.

The National Weather Service measured wind speeds in Waggaman, finding maximum wind gusts of 92 mph. Hurricane Ida's known peak wind gust recorded in the City of New Orleans was 90 mph, all of these wind gusts were significantly below the purported 150 mph rating for their towers.

72.

Entergy estimates that there were about 950,000 outages of electrical services after Ida made landfall.

15

73.

On September 1, 2021, Entergy estimated that as of August 31, 5,112 poles, 5,906 transformers, and 1,185 spans of wire were damaged or destroyed, with further damage assessment ongoing.

74.

Entergy announced that more than 2,000 miles of transmission lines were out of service, along with 216 substations.

75.

Entergy announced that there was damage to eight high-voltage lines that took out power for New Orleans and Jefferson, St. Bernard, and Plaquemines parishes, as well as parts of St. Charles and Terrebonne parishes.

76.

Because the Sewerage and Water Board of New Orleans ("SWB") relies on Entergy to run its 84 sewer lift stations, and because Entergy's transmission line failures caused a power outage, SWB was forced to pump raw sewage into the Mississippi River. This continued through September 6, 2021.

77.

The 400-foot-tall transmission tower with transmission lines over the Mississippi River to the New Orleans area (hereinafter, the "River Tower" or "Avondale Tower") catastrophically collapsed, and its conductor landed in the Mississippi River, causing widespread outages. This line was carrying 800,000 watts of electricity, which was not adequately protected from storms.

78.

The River Tower/Avondale Tower is located in Avondale/Bridge City area on River Road at approximately Lat/Long 29.928444499210215, -90.17900987736854.

79.

The River Tower delivers power from the Waterford power plants on the West Bank of St. Charles Parish through Avondale to Harahan on the East Bank

80.

According to Entergy, the River Tower passed inspections and was deemed to have no structural issues, and did not need any upgrades, as recently as December 2020. Obviously, the inspection was flawed.

16

81.

Prior to Ida, Entergy CEO Phillip May stated, "That [River Tower] was very robustly engineered." "We're not going to go in and proactively replace a tower like that. I mean, that is an enormously expensive engineered structure."

82.

The River Tower either was not constructed pursuant to "industry practice" and not have guide wires to strengthen the tower from extreme winds, or it did not have guide wires that were sufficiently strong to prevent the tower's collapse. Obviously, Entergy has not done appropriate study and analysis of the tower, including the steel's integrity, which has been repeatedly subjected to severe stresses, such as Hurricane Katrina in 2005.

83.

In addition to the River Tower, the seven other transmission towers also failed, and according to Entergy, the cause was wind damage to twelve of the 1,500 poles or towers that carry those seven lines. Seven of those twelve structures (poles or towers) were destroyed, and five others were damaged. All of which speaks to the inadequacy of Entergy's inspections and maintenance programs.

84.

On information and belief, the New Orleans Sewage & Water Board relies on Entergy and backup generators to keep the drainage pumps operational. But the failure of the Entergy Transmission System, as well as the failure of the backup generator on the Westbank, led to the inability to pump water out of the Algiers neighborhoods, resulting in the flooding of that part of New Orleans.

**The 9th Ward, the French Quarter, and the CBD**

Entergy built a $210 million, 128-megawatt, natural gas-fired plant (the "New Orleans Power Station" or "NOPS") in New Orleans East.

85.

In 2017, Entergy argued in favor of construction of NOPS, in part, by arguing that it would help provide energy if the city became "electrically islanded" from the rest of the interconnected transmission grid, as it was after Hurricane Gustav."

17

86.

In 2018, Entergy paid actors from $60 to $200 each to go to New Orleans City Council meetings and pretend to support construction of NOPS. For Entergy's fraud, the city council of New Orleans fined Entergy $5 million. https://readersupportednews.org/news-section2/318-66/49935-actors-were-paid-to-attend-new-orleans-city-council-meetings-supporting-power-plant

87.

NOPS purportedly became operational in May 2020.

88.

NOPS was purportedly designed with a "black start" capability, to allow the plant to be operated even if disconnected from the national power grid. NOPS independently was supposed to have the ability to power about 10% of the City of New Orleans' energy needs.

89.

After Hurricane Ida passed through southeast Louisiana, NOPS sat idle and undamaged.

90.

NOPS was not in use until September 1, 2021, at which point it only served a small section of the New Orleans East.

91.

The failure to activate or turn on NOPS resulted in portions of the City of New Orleans not having power for several days. Those within the NOPS grid were specifically damaged as a result of this failure.

92.

On September 4, 2021, Entergy restored three of the eight transmission lines, bringing the restoration total to six of the eight transmission lines. As of that day, the two transmission lines that were supposed to go the River Tower remained down.

93.

Ironically, Entergy is seeking to charge customers to cover $2.4 billion in power restoration costs for 2020 storms that affected Louisiana, including Hurricanes Laura, Delta, and Zeta. No one yet knows what Entergy will charge its customers for its costs resulting from its failure to properly harden and maintain its systems following Hurricane Ida.

18

FILED
2021 SEP 30 P 09:40
CIVIL
DISTRICT COURT

94.

As a result of the failure of Entergy's Transmission System, Plaintiffs have suffered significant damages. Entergy was well aware that the failure of its Transmission System would result in a disaster, including the inability to supply power to their customers and the Sewerage and Water Board. Entergy was also well aware that the failure of the Transmission System would result in its customers suffering damages, including but are not limited to:

a) Emotional distress, mental anguish, physical fear, and fright;

b) Loss of habitation and the cost of relocation and other costs associated with having to live outside of their home;

c) Growth of mold and mildew inside of their home and the restoration thereof;

d) Physical injury resulting in the loss of electricity, particularly to those people unable to leave their home; and

e) Wrongful death of 10+ individuals who perished as a result of the power outage as of the date of this filing.

(These damages can be addressed in subclasses subsequent to the trial of liability of all parties.)

95.

Many of the citizenry serviced by Entergy were required to evacuate and find other accommodations as far away as Atlanta, St. Louis, Houston, and other cities of equal distance, or to endure the horrors of living without electricity and being cut off from the rest of the world, without the ability to cook, work and/or maintain their business, all in an environment without air conditioning.

96.

Petitioners have incurred and will continue to incur substantial costs in response to the failure of the Transmission System, as well the other costs which will be proven at the trial of this matter.

97.

Based on past experiences, it was clearly foreseeable that Entergy's equipment and Transmission System would be required to endure and survive a storm of the magnitude of Ida or greater.

19

98.

It is beyond dispute that Entergy was aware of the foreseeability of a storm like Ida or greater, which could hit its serviced area in Louisiana. Knowing this, Entergy consciously chose not to design, install, construct, operate, inspect, and maintain its Transmission System as a reasonable electric supplier/producer.

99.

Upon information and belief, the applicable design standards were not met nor did the Defendants properly maintain these structures and installations.

100.

National Electrical Safety Code (NESC) changes in 2007 required structures (like the Entergy towers) to withstand 140 mph winds along the Louisiana coast.

101.

Entergy failed to adhere to minimum standards of the Louisiana Department of Transportation and Development.

102.

Entergy failed to adhere to local standards in the following non-exclusive ways:

a) City Ordinance 158-892 ("Repairs to be made") provides that "All companies shall make necessary repairs to their lines of conductors. The permit to make such repairs does not, however, cover the erection in any street, alley or public place of any additional poles, wires, fixtures or similar structures."

b) City Ordinance Chapter 158, Division 2, at Section 158-1044, *et seq*. is the "Bill of Rights" that provides ratepayers with certain rights. This includes the "right to safe and reliable service in accordance with industry standards." *See* Section 158-1045.

**Causes of Action**

103.

Even if Entergy adhered to the statutory standards, Entergy was nevertheless negligent in the following non-exclusive ways:

a. Failure to use reasonable care to keep the transmission towers and power lines in a safe condition;

20

2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT
FILED

b. Failure to properly design, construct, and install its Transmission System, including but not limited to, distribution and/or transmission towers and power lines;

c. Failure to properly inspect its Transmission System, including but not limited properly/adequately to, distribution and/or transmission towers and power lines;

d. Failure to establish proper procedures for inspection and maintenance of the Transmission System, including but not limited to, its equipment, including the towers and power lines;

e. Failure to implement and follow those proper procedures listed above;

f. Failure to maintain and repair its Transmission System, including but not limited to, distribution and/or transmission towers and power lines;

g. Failure to warn the public, including Plaintiffs, of the dangerous condition of the Transmission System, including but not limited to, towers and power lines;

h. Failing to discover or repair the River Tower and other aspects of the Transmission System;

i. Acting in a careless and negligent manner without due regard for the safety of others;

j. Failing to use due care and caution under the existing circumstances;

k. Considering the admonitions, warnings, and sanctions given to Entergy, Entergy should have warned the public of the damages that could result from its failure to comply or act on the warnings admonitions and sanctions;

l. Failure to place certain utilities underground, rather than in overhead poles and lines; and

m. Any and all other acts of negligence by Entergy and/or its employees, agents, and representatives which may be discovered between now and the time of the trial of this matter.

104.

Petitioners plead the doctrine of strict liability asserting that Entergy, as the transmission system, towers, and power lines owners and custodians, knew or, in the exercise of reasonable

21

care, should have known of the ruin, vice, or defect, in the lines which caused the widespread outages in southeast Louisiana, and that the damage could, and would, have been prevented by the exercise of reasonable care.

105.

Entergy is strictly liable for the causes of widespread outages and corresponding damages.

a) Entergy is the owner/custodian of the Transmission System;

b) It was within the sole discretion of Entergy, to properly construct, inspect, repair, replace, or maintain the Transmission System that is the subject of this Litigation;

c) The widespread outages were caused by a ruin, vice, or defect in the power lines;

d) Entergy unquestionably should have known of the defective condition of its Transmission System; and

e) Entergy obviously failed to exercise reasonable care and vigilance.

106.

The actions of Entergy were willful violations of applicable safety standards and statutes in its failure to do proper testing, maintenance, and inspection procedures on the Transmission System and, as a result, Entergy's conduct constituted negligence *per se*.

107.

In addition to the negligence stated above, and in the alternative thereto, the injuries and damages suffered by the Plaintiffs and others were caused by acts and omissions of Entergy, which acts, or omissions may be beyond proof by the Petitioners, but which were within the knowledge and control of Entergy, there being no other possible conclusion than that the failure of the Transmission System resulted from the negligence of Entergy. The damage and injuries would not have occurred had Entergy exercised the requisite degree of care for management of a Transmission System in this location, and the Petitioners therefore plead the doctrine of *res ipsa loquitur*. Simply put, the fact that all eight towers failed in the face of wind clearly 1/3 or 50mph below the maximum wind speed that the president of Entergy guaranteed the public that these towers would sustain, speaks of a gross lack of observation, maintenance, and repairs on Entergy's part.

108.

Entergy breached its express and implied contracts.

22

109.

The widespread outages and corresponding damages were caused by the negligence and strict liability of Entergy and/or its agents, employees and assigns for all reasons stated herein, and all without any negligence on behalf of the citizens of Southeast Louisiana.

**Class Allegations**

110.

This is an issue-based class action brought pursuant to La. C.C.P. art. 591, *et seq.,* on behalf of all residents of the East Bank of Jefferson Parish and all residents of Orleans Parish.

111.

It is Plaintiffs' intent to file this lawsuit invoking the local controversy exception of CAFA, 28 U.S.C. § 1332(d)(4)(A), and to proceed under the local controversy exception.

112.

The common issue is Entergy's liability for its negligence and other breaches outlined above resulting in its failure to supply electricity to their customers, some of whom remain without power today, as of the date of this filing. The issue-based class is manageable in as much as the issue of liability can be tried to one jury. And once Entergy's liability is determined, the Court may maintain subclass(es) for individual damages (including wrongful death) which then could be tried by this Court in groups with specific commonality, typicality, and numerosity.

113.

Until a more precise determination is made of all residents of the East Bank of Jefferson Parish and all residents of Orleans Parish affected by the failure of the Transmission System, the Plaintiffs allege that the class consists of all persons affected by power outages and residing in the Parishes of within the service area of the Entergy who sustained personal, mental, and economic damages, and/or inconvenience as a result of the failure of the Transmission System resulting from Hurricane Ida.

114.

This action is appropriate for determination through the Louisiana Class Action Procedure (La. C.C.P. Art. 591, *et seq.*) for the following reasons:

a) The substantial number of potential claimants present a level of numerosity better handled through the class action procedure as opposed to a mass joinder of individual claims;

23

b) The common issues of law and fact pertaining to the determination of fault and the liability for compensatory damages predominate over the individual issues of quantum;

c) The determination of fault may be made in the class action under the provisions of La. C.C.P. art. 592.1(C)(1), (2) & (3) without the necessity of proof at that time as to the amount of those damages, thereby establishing guidelines for settlement and/or subsequent trials in individual cases if necessary; thereby simplifying and expediting the resolution of this matter.

d) Petitioners herein have sustained damages of the nature described hereinabove and are suitable representatives of the class (subclasses);

e) The plaintiff representatives herein are represented by skilled attorneys who are experienced in the handling of mass tort class actions of this type[2] and who may be expected to handle this action in an expeditious and economical manner to the best interests of all the class membership; and

f) The Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially in situations such as this where the number of claimants may exceed numbers that would exhaust the resources of this Court and protract litigation over many years.

115.

Greater than two-thirds of the members of the proposed class in the aggregate are citizens of Louisiana.

116.

Each of the three defendants are defendants from whom significant relief is sought by members of the plaintiff class, whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class, and who are citizens of Louisiana.

117.

All the conduct of Entergy complained of herein and resulting damages occurred in Louisiana. No claim is made under any federal law.

118.

On information and belief, during the three-year period preceding the filing of this class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

---

[2] *In re: New Orleans Train Car Leakage Fire Litigation.*

24

2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

119.

Excluded from the Class are:

a) the officers and directors and employees of the Defendants;

b) any judge or judicial officer assigned to this matter and his or her immediate family;

c) any legal representative, successor, or assign of any excluded persons or entities;

d) any non-residents; and

e) any person or business that is not domiciled in the State of Louisiana, so as to maintain jurisdiction and venue in state court of Louisiana.

120.

Petitioners request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Petitioners pray that:

1) Entergy be cited to appear and answer this FIRST AMENDED CLASS ACTION PETITION FOR DAMAGES AND JURY TRIAL REQUEST;

2) after due proceedings are had, that this action be certified as a class action pursuant to the provisions of La. C.C.P. art. 591, *et seq*., in the respects alleged hereinabove, for the purposes of determining the common issue of liability as well as damages, if the Court so desire and the basis for assessment of all damages, if any;

3) upon certification of the class action, the Court call for the formulation of a suitable management plan pursuant to La. C.C.P. art. 593(C); and

4) following due proceedings had, that there be judgment against Defendants ordering full compliance with and adherence to all applicable industry and design standards, in connection with the restoration of damaged lines, the construction of any new facilities and the maintenance of all every asset owned and/or operated by Defendants which, in any respect, serves the residents of Orleans Parish and the East Bank of Jefferson Parish, including, but not limited to, the underground placement of all above ground electric lines, together with all other appropriate equitable relief, and damages.

25

FILED

2021 SEP 30   P 09:40

CIVIL

DISTRICT COURT

Respectfully Submitted:

*/s/Celeste Brustowicz*

_____

Stuart H. Smith (LA#17805)
Barry J. Cooper, Jr. (LA#27202)
Andrew Jacoby (LA# 32512)
COOPER LAW FIRM, LLC
1525 Religious Street
New Orleans, Louisiana 70130
Phone: 504-399-0009
Fax: 504-309-6989
Email: ajacoby@clfnola.com

**AND**

Jack Harang (LA#15083)
HARANG LAW OFFICES
3500 North Hullen Street
Metairie, Louisiana 70002
Phone: (504) 810-4734
Email: jwharang@gmail.com

**AND**

Juan Lafonta (LA#27541)
JUAN LAFONTA AND ASSOCIATES
6305 Elysian Fields Avenue, Suite 207
New Orleans, LA 70122
Phone: (504) 288-4911
Email: jlafonta@lafontalaw.com

**PLEASE SERVE WITH ORIGINAL PETITION**

**Entergy Corporation**
*Through its Registered Agent for Service of Process*
Marcus V. Brown
639 Loyola Avenue, 28th Floor
New Orleans, LA 70113

**Entergy New Orleans, LLC**
*Through its Registered Agent for Service of Process*
Marcus V. Brown
639 Loyola Avenue, 28th Floor
New Orleans, LA 70113

**Entergy Louisiana, LLC**
*Through its Register Agent for Service of Process*
John A. Braymer
446 North Boulevard
Baton Rouge, LA 70802

2021 SEP 30  P 09:40

CIVIL

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**  DISTRICT COURT

**STATE OF LOUISIANA**

**DOCKET NO. 2021-07365**      **SECTION: 5**           **DIVISION: B**

**ANTHONY J. STEWART, DIANE RALEY, TOMIKA JORDAN, SHEENA ALTINE,
TYELGA J. KEARNEY, PHYLLIS BANKS, RYAN COOPER, ROSLYN ROBERT,
CHRISHANTE RUFFIN, JOYCE WATKINS, JASON C. TULLOS, RANDOLPH H.
GONZALES, JR., 516 ST. PHILIP, LLC, MERCH DAT, LLC., CARNIVAL
COLLECTIBLES LLC, WILLIAM A MYERS, JR., WILLIAM A MYERS, III., AND
ALL OTHER SIMILARLY EFFECTED INDIVIDUALS AND ENTITIES**

**v.**

**ENTERGY CORP., ENTERGY NEW ORLEANS, LLC,
and ENTERGY LOUISIANA, LLC**

**FILED: _____**            **_____**

                              **DEPUTY CLERK**

**REQUEST FOR NOTICE**

    **NOW INTO COURT,** comes Attorneys for Petitioners, proposed Class

Representatives, who pursuant to Louisiana Code of Civil Procedure, Art. 1572, et seq., hereby

request notice of any trial date filed in the record, at least 10 days before the date fixed for trial.

Moreover, Petitioners request written notice ten (10) day in advance of the date fixed for trial or

hearing of any Exception, Motion, Rule to show cause, conference of any nature with the Court,

or trial on the Merits of the above captioned suit.  Finally, pursuant to Louisiana Code of Civil

Procedure Art. 1912 and 1914, Petitioners hereby requests immediate notice of any interlocutory

and final orders/and or judgements of any type, including judgements or any Exception, Motion,

Rule to show cause or Trial on the Merits in the above captioned proceeding.

                    Respectfully Submitted:

                    /s/ Celeste Brustowicz
                    Stuart H. Smith (LA#17805)
                    Barry J. Cooper, Jr. (LA#27202)
                    Celeste Brustowicz (LA#16835)
                    Andrew Jacoby (LA# 32512)
                    COOPER LAW FIRM, LLC
                    1525 Religious Street
                    New Orleans, Louisiana 70130
                    Phone: 504-399-0009
                    Fax: 504-309-6989
                    Email: ajacoby@clfnola.com

**AND**

Jack Harang (LA#15083)
HARANG LAW OFFICES
3500 North Hullen Street
Metairie, Louisiana 70002
Phone: (504) 810-4734
Email: jwharang@gmail.com


**AND**


Juan Lafonta (LA#27541)
JUAN LAFONTA AND ASSOCIATES
6305 Elysian Fields Avenue, Suite 207
New Orleans, LA 70122
Phone: (504) 288-4911
Email: jlafonta@lafontalaw.com


**Please Serve with Original and Amended Petition**

**Entergy Corporation**
*Through its Registered Agent for Service of Process*
Marcus V. Brown
639 Loyola Avenue, 28th Floor
New Orleans, LA 70113

**Entergy New Orleans, LLC**
*Through its Registered Agent for Service of Process*
Marcus V. Brown
639 Loyola Avenue, 28th Floor
New Orleans, LA 70113

**Entergy Louisiana, LLC**
*Through its Register Agent for Service of Process*
John A. Braymer
446 North Boulevard
Baton Rouge, LA 70802

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO. 2021-07365          SECTION: 5          DIVISION : B

**ANTHONY J. STEWART, DIANE RALEY, TOMIKA JORDAN, SHEENA ALTINE, TYELGA J. KEARNEY, PHYLLIS BANKS, RYAN COOPER, ROSLYN ROBERT, CHRISHANTE RUFFIN, JOYCE WATKINS, JASON C. TULLOS, RANDOLPH H. GONZALES, JR., 516 ST. PHILIP, LLC, MERCH DAT, LLC., CARNIVAL COLLECTIBLES LLC, WILLIAM A MYERS, JR., WILLIAM A MYERS, III., AND ALL OTHER SIMILARLY EFFECTED INDIVIDUALS AND ENTITIES**

v.

**ENTERGY CORP. and ENTERGY NEW ORLEANS, LLC
and ENTERGY LOUISIANA, LLC**

FILED: _____          _____

**DEPUTY CLERK**

## INTERROGATORIES

Petitioners though undersigned counsel and in accordance with La. C.C.P. art. 1420 et seq., hereby propound the following request for productions to Defendants (Entergy Corp, Entergy New Orleans, LLC and Entergy Louisiana, LLC (collectively Defendants), and are to be answered separately, fully, in writing and under oath, within the legal delays allowed by law. These initial Request for Production of Documents are deemed to be continuing and may require reasonable supplementation pursuant to art. 1428 the Louisiana Code of Civil Procedure.

### Instructions

1.    As used herein, all terms shall have the fullest and broadest meaning accorded to those terms and shall have the meaning generally ascribed to such terms in common parlance,

2.    The use of the singular form of any word includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense

3.    All answers are to be made separately and fully and fully and an incomplete or evasive answer is a failure to answer. Where an interrogatory asks for an answer in more than one part, separate the parts in Defendants' answer accordingly so that each part is clearly set out and understandable.

i

FILED

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

4.      Where Defendants' knowledge or information in its possession is requested, such request includes knowledge or information in possession of Defendants' representatives, employees, agents, independent contractors, insurers, and unless privileged, Defendants' attorneys.

5.      If you have only incomplete knowledge of the answer to an interrogatory, please answer to the extent of Defendants' knowledge and state specifically what part or area of the interrogatory you have only incomplete knowledge of and identify the person (s) who does or might have additionally knowledge or information to complete the answer.

6.      The interrogatories shall be continuing in nature so as to require supplemental responses that becomes known or that come into Defendants' possession, custody, or control at any time before final judgement in this action.

7.      If you contend that any responsive data is not reasonably accessible because of undue burden or cost, you must advise us of your position and explain specifically what data is being withheld any why.

8.      If you consider any of these interrogatories ambiguous or unduly burdensome in any way, inform the undersigned, in writing, of the perceived ambiguity or basis of your belief that the request is ambiguous or burdensome.  If appropriate, counsel for Plaintiffs may modify or rephrase the interrogatory in a reply letter to further clarify, in appropriate.  Any such reply letter may be treated as a modification of the interrogatory.

9.      If any responsive information, document, or thing is withheld on the ground that it is privilege or otherwise confidential, that information, document, or thing shall be described with sufficient particularity (including date, author, recipient(s), subject matter, and basis for privilege or confidentiality) to permit a determination as to whether there is demonstrated entitlement to an application for the protection invoked.

10.     If any documents to be identified have been destroyed, lost, or otherwise discarded, your answers to that Interrogatory should identify such document(s) as completely as possible and provide the following information with respect to each such document(s):

    a.   The last known custodian(s);
    b.   The date of disposal;
    c.   The method of disposed;
    d.   The person authorizing or directing the disposal;
    e.   The person disposing of the document(s);
    f.   The reason for the disposal;
    g.   Whether any copy(ies) of the document(s) exist, including any
         electronic copies od said document(s) or electronic backup of any
         information contained in said document(s); and

2

FILED

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

h.     Whether any documents or other records exist relating to the disposition of said document(s).

11.     Unless otherwise specified in a particular interrogatory, the time period covered by each interrogatory runs from August 29, 2021, to the present.

## DEFINITIONS

The following definitions shall apply throughout these discovery requests:

1.     The term "Defendant", "you," "your," and "yours" shall refer to the party to whom these discovery requests are directed - Entergy Corp. and Entergy New Orleans, LLC and Entergy Louisiana, LLC—including without limitation any and all agents, employees, partners, principals, representatives, or anyone acting or purporting to act on your behalf, for any purpose whatsoever.

2.     The term "Plaintiff" or "Plaintiffs" shall mean Anthony J. Stewart, Diane Raley, Tomika Jordan, Sheena Altine, Tyelga J. Kearney, Phyllis Banks, Ryan Cooper, Roslyn Robert, Chrishante Ruffin, Joyce Watkins, Jason C. Tullos, Randolph H. Gonzales, Jr., 516 St. Philip, LLC, Merch Dat, LLC., Carnival Collectibles LLC, William A Myers, Jr., William A Myers, III., and all other similarly effected individuals and entities.

3.     The term "Complaint" shall mean the Complaint filed against you in the Civil District Court, Parish of Orleans,

4.     The term "document" shall mean any written, printed, non-printed, typed, photocopied, photographic, reproduced, and graphic matter of any kind or character and any recorded or stored information, however produced or reproduced, (i) in your possession, custody or control, or (ii) known by you to exist, including (without limiting the generality of the foregoing) affidavits, agreements, books, calendars, communications, contracts, correspondence, desk pads, diaries, diary or calendar entries, interim or tentative drafts, journals and journal entries, ledgers and ledger entries, lists, memoranda, minutes and minute entries, notes, printouts, records of meetings, telephone or other conferences, conversations or communications, reports, statements, studies, telegraphs, telexes, printed copies of electronic mail, teletypes and/or workpapers, and information stored in computers or other data storage or processing equipment, or in magnetic or electronic media, microfilm or microfiche or other form which can be retrieved or printed out or reduced or readable form through proper programming, decoding, or processing, together with necessary instructions for understanding, using, or

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

reproducing same. The term "document" also includes originals and all copies of documents containing notes, notations, comments, observations, remarks, underscoring, marks made for emphasis, highlighting, or attention or encircling, relating, or referring in any way to the subject matter of these Interrogatories.

5.    "Identify" in connection with a document means to:

    a.    State the type of document (for example, a letter, a memorandum, etc.); the date(s) upon which the document was prepared and/or executed; the name and address of its author; and the name and address of the recipients and intended recipients of the document or copies of the document.

    b.    In lieu of identifying a document as required by an interrogatory, it shall be an acceptable response to the interrogatory to attach a legible copy of the document to the responses, and to make reference to the specific document in the response to the interrogatory. By responding in this fashion, you agree to waive all objections to the authenticity of the copy so produced.

6.    "Identify" or "name" in connection with a natural person means to:

    a.    State the person's name, present address, and telephone number, if known, or most recent past address and telephone number, if the present address and telephone number are not known.

    b.    State the person's relationship to you, identify his present employer and the person's position with that employer, and state the person's title which is derived from that position.

7.    "Identify" in connection with a corporation means to:

    a.    State its full name, its state of incorporation, and its principal place of business; and

    b.    State the corporation's relationship to you.

8.    "Identify" in connection with a person other than an individual or a corporation means to state the person's official name, the person's organizational form, and the person's present address.

9.    "Identify" in connection with any act, occurrence, even, action, doing, occasion, meeting, transaction, or conduct (all of which are included within the term "act" when it is used herein in connection with the term "identify"), shall mean to set forth the event or events constituting such act; state its location; state the date of the act; identify the persons participating,

4

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

present, or involved at any time during the act, or having knowledge concerning the act, and

identify all documents relating or referring in any way thereto.  When used in reference to any

oral conversation or discussion, "identify" shall mean, in additional to the foregoing, to set forth

the substance of what was said, when, where, by and to whom.

10.      The term "person" shall mean all natural and civil persons and includes any

individual, association, corporation, partnership, and any other business, legal or government

entity.

11.      The term "tower" or "towers" shall mean towers located within Orleans Parish and

those parishes adjacent to Orleans Parish that provide electricity to your rate payers located in

Orleans Parish and the East Bank of Jefferson Parish

to copied, photographic, reproduced, and graphic matter of any kind or character and any recorded

   or stored information, however produced or reproduced, (i) in your possession, custody or

   control, or (ii) known by you to exist, including (without limiting the generality of the

   foregoing) affidavits, agreements, books, calendars, communications, contracts,

   correspondence, desk pads, diaries, diary or calendar entries, interim or tentative drafts,

   journals and journal entries, ledgers and ledger entries, lists, memoranda, minutes and

   minute entries, notes, printouts, records of meetings, telephone or other conferences,

   conversations or communications, reports, statements, studies, telegraphs, telexes, printed

   copies of electronic mail, teletypes and/or workpapers, and information stored in computers

   or other data storage or processing equipment, or in magnetic or electronic media,

   microfilm or microfiche or other form which can be retrieved or printed out or reduced or

   readable form through proper programming, decoding, or processing, together with

   necessary instructions for understanding, using, or reproducing same. The term

   "document" also includes originals and all copies of documents containing notes, notations,

   comments, observations, remarks, underscoring, marks made for emphasis, highlighting,

   or attention or encircling, relating, or referring in any way to the subject matter of these

   Interrogatories.

3.      "Identify" in connection with a document means to:

              (a)      State the type of document (for example, a letter, a memorandum, etc.); the

                       date(s) upon which the document was prepared and/or executed; the name

5

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

FILED

and address of its author; and the name and address of the recipients and intended recipients of the document or copies of the document.

    (b)    In lieu of identifying a document as required by an interrogatory, it shall be an acceptable response to the interrogatory to attach a legible copy of the document to the responses, and to make reference to the specific document in the response to the interrogatory. By responding in this fashion, you agree to waive all objections to the authenticity of the copy so produced.

4.    "Identify" or "name" in connection with a natural person means to:

    (a)    State the person's name, present address, and telephone number, if known, or most recent past address and telephone number, if the present address and telephone number are not known.

    (b)    State the person's relationship to you, identify his present employer and the person's position with that employer, and state the person's title which is derived from that position.

5.    "Identify" in connection with a corporation means to:

    (a)    State its full name, its state of incorporation, and its principal place of business; and

    (b)    State the corporation's relationship to you.

6.    "Identify" in connection with a person other than an individual or a corporation means to state the person's official name, the person's organizational form, and the person's present address.

7.    "Identify" in connection with any act, occurrence, even, action, doing, occasion, meeting, transaction, or conduct (all of which are included within the term "act" when it is used herein in connection with the term "identify"), shall mean to set forth the event or events constituting such act; state its location; state the date of the act; identify the persons participating, present, or involved at any time during the act, or having knowledge concerning the act; and identify all documents relating or referring in any way thereto. When used in reference to any oral conversation or discussion, "identify" shall mean, in additional to the foregoing, to set forth the substance of what was said, when, where, by and to whom.

2021 SEP 30  P 09:40

CIVIL

DISTRICT COURT

8.    The term "person" shall mean all natural and civil persons and includes any individual, association, corporation, partnership, and any other business, legal or government entity.

## INTERROGATORIES

### INTERROGATORY NO: 1

From 2005 until present, please identify those individuals within your company (please include their title and office location) who responsible for maintenance of the towers.

### INTERROGATORY NO: 2

From 2005 until present, please identify those individuals within your company (please include their title and office location) who responsible for hardening of the towers.

### INTERROGATORY NO: 3

From 2005 until present, please identify those individuals within your company (please include their title and office location) who responsible for resiliency of the towers.

### INTERROGATORY NO. 4:

From 2005 until present, please identify those individuals within your company (please include their title and office location) who responsible for maintenance of poles used by you to facilitate electricity transmission to your Orleans Parish and East bank Jefferson Parish rate payers.

### INTERROGATORY NO. 5:

From 2005 until present, please identify those individuals within your company (please include their title and office location) who responsible for hardening of poles used by you to facilitate electricity transmission to your Orleans Parish and East bank Jefferson Parish rate payers.

### INTERROGATORY NO 6:

From 2005 until present, please identify those individuals within your company (please include their title and office location) who responsible for resiliency of poles used by you to facilitate electricity transmission to your Orleans Parish and East bank Jefferson Parish rate payers.

### INTERROGATORY NO. 7:

At the time of Hurricane Ida, how many customers did you have in Orleans Parish?

7

FILED
2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

**INTERROGATORY NO. 8:**

At the time of Hurricane Ida, how many rate payers did you have on the east bank of Jefferson Parish?

**INTERROGATORY NO: 9:**

From 2005 until present, please identify all individuals or companies that you engaged/hired/retained to provide inspection services on the towers and related equipment necessary to provide electricity to your Orleans Parish and east bank of Jefferson Parish rate payers; in responding, provides their complete name, address, and a brief description of the work performed and when.

**INTERROGATORY NO. 10:**

What notice or information did you provide to your Orleans Parish and east bank of Jefferson Parish rate payers in advance of Hurricane Ida and your ability to provide power? Please describe with such sufficiency that a request for production of documents can issue or produce copies of those notices or information.

**INTERROGATORY NO. 11:**

From 2005 until present, what information did you provide to your Orleans Parish and east bank of Jefferson Parish rate payers about your ability to provide power? Please describe with such sufficiency that a request for production of documents can issue or produce copies of this information.

**INTERROGATORY NO. 12:**

Please describe the facilities, towers, and all other components existing in Orleans Parish and adjacent parishes at the time of Hurricane Ida that you use to provide electricity to your Orleans Parish and east bank of Jefferson Parish rate payers.

**INTERROGATORY NO. 13:**

Please produce all your press releases concerning Tropical Storm Ida and Hurricane Ida.

**INTERROGATORY NO. 14:**

Please identify all witnesses, fact, and expert that you may call at the time of a class certification hearing in this matter. For each individual identified, provide their name, address,

FILED

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

identify them as a fact or expert witness, and a summary of their anticipated testimony or facts/opinions that you believe they possess.

### INTERROGATORY NO. 15:

Please identify all documents or things you might use or seek to admit at a class certification hearing in this matter, please provide sufficient detail that a request for production might issue or produce a copy of same.

Respectfully submitted,

*/s/ Celeste Brustowicz*

Stuart H. Smith (LA#17805)
Barry J. Cooper, Jr. (LA#27202)
Celeste Brustowicz (LA# 16835)
Andrew Jacoby (LA# 32512)
COOPER LAW FIRM, LLC
1525 Religious Street
New Orleans, Louisiana 70130
Phone: 504-399-0009
Fax: 504-309-6989
Email: ajacoby@clfnola.com

**AND**

Jack Harang (LA#15083)
HARANG LAW OFFICES
3500 North Hullen Street
Metairie, Louisiana 70002
Phone: (504) 810-4734
Email: jwharang@gmail.com

**AND**

Juan Lafonta (LA#27541)
JUAN LAFONTA AND ASSOCIATES
6305 Elysian Fields Avenue, Suite 207
New Orleans, LA 70122
Phone: (504) 288-4911
Email: jlafonta@lafontalaw.com

**PLEASE SERVE WITH ORIGINAL AND AMENDED PETITION**

**Entergy Corporation**
*Through its Registered Agent for Service of Process*
Marcus V. Brown
639 Loyola Avenue, 28th Floor
New Orleans, LA 70113

E-Filed

FILED

2021 SEP 30  P 09:40

CIVIL

DISTRICT COURT

**Entergy New Orleans, LLC**
*Through its Registered Agent for Service of Process*
Marcus V. Brown
639 Loyola Avenue, 28th Floor
New Orleans, LA 70113

**Entergy Louisiana, LLC**
*Through its Register Agent for Service of Process*
John A. Braymer
446 North Boulevard
Baton Rouge, LA 70802

10

2021 SEP 30 P 09:40
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

DOCKET NO.: 2021-07365          SECTION: 5          DIVISION: B

**ANTHONY J. STEWART, DIANE RALEY, TOMIKA JORDAN, SHEENA ALTINE, TYELGA J. KEARNEY, PHYLLIS BANKS, RYAN COOPER, ROSLYN ROBERT, CHRISHANTE RUFFIN, JOYCE WATKINS, JASON C. TULLOS, RANDOLPH H. GONZALES, JR., 516 ST. PHILIP, LLC, MERCH DAT, LLC., CARNIVAL COLLECTIBLES LLC, WILLIAM A MYERS, JR., WILLIAM A MYERS, III., AND ALL OTHER SIMILARLY EFFECTED INDIVIDUALS AND ENTITIES**

v.

**ENTERGY CORP. and ENTERGY NEW ORLEANS, LLC and ENTERGY LOUISIANA, LLC**

FILED: _____          _____
                                          **DEPUTY CLERK**

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION**

Petitioners though undersigned counsel and in accordance with La. C.C.P. art. 1420 et seq., hereby propound the following request for productions to Defendants (Entergy Corp, Entergy New Orleans, LLC and Entergy Louisiana, LLC (collectively Defendants), and are to be answered separately, fully, in writing and under oath, within the legal delays allowed by law. These initial Request for Production of Documents are deemed to be continuing and may require reasonable supplementation pursuant to art. 1428 the Louisiana Code of Civil Procedure.

**Instructions**

1.     As used herein, all terms shall have the fullest and broadest meaning accorded to those terms and shall have the meaning generally ascribed to such terms in common parlance,

2.     The use of the singular form of any word includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense

3.     All answers are to be made separately and fully and fully and an incomplete or evasive answer is a failure to answer. Where an interrogatory asks for an answer in more than one part, separate the parts in Defendants' answer accordingly so that each part is clearly set out and understandable.

FILED

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

4.     Where Defendants' knowledge or information in its possession is requested, such request includes knowledge or information in possession of Defendants' representatives, employees, agents, independent contractors, insurers, and unless privileged, Defendants' attorneys.

5.     If you have only incomplete knowledge of the answer to an interrogatory, please answer to the extent of Defendants' knowledge and state specifically what part or area of the interrogatory you have only incomplete knowledge of and identify the person (s) who does or might have additionally knowledge or information to complete the answer.

6.     The interrogatories shall be continuing in nature so as to require supplemental responses that becomes known or that come into Defendants' possession, custody, or control at any time before final judgement in this action.

7.     If you contend that any responsive data is not reasonably accessible because of undue burden or cost, you must advise us of your position and explain specifically what data is being withheld any why.

8.     If you consider any of these interrogatories ambiguous or unduly burdensome in any way, inform the undersigned, in writing, of the perceived ambiguity or basis of your belief that the request is ambiguous or burdensome.  If appropriate, counsel for Plaintiffs may modify or rephrase the interrogatory in a reply letter to further clarify, in appropriate.  Any such reply letter may be treated as a modification of the interrogatory.

9.     If any responsive information, document, or thing is withheld on the ground that it is privilege or otherwise confidential, that information, document, or thing shall be described with sufficient particularity (including date, author, recipient(s), subject matter, and basis for privilege or confidentiality) to permit a determination as to whether there is demonstrated entitlement to an application for the protection invoked.

10.    If any documents to be identified have been destroyed, lost, or otherwise discarded, your answers to that Interrogatory should identify such document(s) as completely as possible and provide the following information with respect to each such document(s):

        a.     The last known custodian(s);
        b.     The date of disposal;
        c.     The method of disposed;
        d.     The person authorizing or directing the disposal;
        e.     The person disposing of the document(s);
        f.     The reason for the disposal:
        g.     Whether any copy(ies) of the document(s) exist, including any electronic copies od said document(s) or electronic backup of any information contained in said document(s); and

FILED

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

h.    Whether any documents or other records exist relating to the disposition of said document(s).

i.

11.    Unless otherwise specified in a particular interrogatory, the time period covered by each interrogatory runs from August 29, 2021, to the present.

## Definitions

The following definitions shall apply throughout these discovery requests:

1.    The term "Defendant", "you," "your," and "yours" shall refer to the party to whom these discovery requests are directed – Entergy Corp. and Entergy New Orleans, LLC and Entergy Louisiana, LLC—including without limitation any and all agents, employees, partners, principals, representatives, or anyone acting or purporting to act on your behalf, for any purpose whatsoever.

2.    The term "Plaintiff" or "Plaintiffs" shall mean Anthony J. Stewart, Diane Raley, Tomika Jordan, Sheena Altine, Tyelga J. Kearney, Phyllis Banks, Ryan Cooper, Roslyn Robert, Chrishante Ruffin, Joyce Watkins, Jason C. Tullos, Randolph H. Gonzales, Jr., 516 St. Philip, LLC, Merch Dat, LLC., Carnival Collectibles LLC, William A Myers, Jr., William A Myers, III., and all other similarly effected individuals and entities.

3.    The term "Complaint" shall mean the Complaint filed against you in the Civil District Court, Parish of Orleans,

4.    The term "document" shall mean any written, printed, non-printed, typed, photocopied, photographic, reproduced, and graphic matter of any kind or character and any recorded or stored information, however produced or reproduced, (i) in your possession, custody or control, or (ii) known by you to exist, including (without limiting the generality of the foregoing) affidavits, agreements, books, calendars, communications, contracts, correspondence, desk pads, diaries, diary or calendar entries, interim or tentative drafts, journals and journal entries, ledgers and ledger entries, lists, memoranda, minutes and minute entries, notes, printouts, records of meetings, telephone or other conferences, conversations or communications, reports, statements, studies, telegraphs, telexes, printed copies of electronic mail, teletypes and/or workpapers, and information stored in computers or other data storage or processing equipment, or in magnetic or electronic media, microfilm or microfiche or other form which can be retrieved or printed out or reduced or readable form through proper programming, decoding, or processing, together with necessary instructions for understanding, using, or

2021 SEP 30 P 09:40

CIVIL
DISTRICT COURT

reproducing same. The term "document" also includes originals and all copies of documents containing notes, notations, comments, observations, remarks, underscoring, marks made for emphasis, highlighting, or attention or encircling, relating, or referring in any way to the subject matter of these Interrogatories.

5.      "Identify" in connection with a document means to:

     a.   State the type of document (for example, a letter, a memorandum, etc.); the date(s) upon which the document was prepared and/or executed; the name and address of its author; and the name and address of the recipients and intended recipients of the document or copies of the document.

     b.   In lieu of identifying a document as required by an interrogatory, it shall be an acceptable response to the interrogatory to attach a legible copy of the document to the responses, and to make reference to the specific document in the response to the interrogatory. By responding in this fashion, you agree to waive all objections to the authenticity of the copy so produced.

6.      "Identify" or "name" in connection with a natural person means to:

     a.   State the person's name, present address, and telephone number, if known, or most recent past address and telephone number, if the present address and telephone number are not known.

     b.   State the person's relationship to you, identify his present employer and the person's position with that employer, and state the person's title which is derived from that position.

7.      "Identify" in connection with a corporation means to:

     a.   State its full name, its state of incorporation, and its principal place of business; and

     b.   State the corporation's relationship to you.

8.      "Identify" in connection with a person other than an individual or a corporation means to state the person's official name, the person's organizational form, and the person's present address.

9.      "Identify" in connection with any act, occurrence, even, action, doing, occasion, meeting, transaction, or conduct (all of which are included within the term "act" when it is used herein in connection with the term "identify"), shall mean to set forth the event or events constituting such act; state its location; state the date of the act; identify the persons participating,

FILED
2021 SEP 30 P 09:40
CIVIL
DISTRICT COURT

present, or involved at any time during the act, or having knowledge concerning the act, and identify all documents relating or referring in any way thereto. When used in reference to any oral conversation or discussion, "identify" shall mean, in additional to the foregoing, to set forth the substance of what was said, when, where, by and to whom.

10.     The term "person" shall mean all natural and civil persons and includes any individual, association, corporation, partnership, and any other business, legal or government entity.

11.     The term "tower" or "towers" shall mean towers located within Orleans Parish and those parishes adjacent to Orleans Parish that provide electricity to your rate payers located in Orleans Parish and the East Bank of Jefferson Parish

## REQUEST FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All structural design calculations for all towers including all required industry design loading combinations with its required applied forces and loads.

### REQUEST FOR PRODUCTION NO. 2:

All structural drawings for the power distribution tower(s), including all connection details.

### REQUEST FOR PRODUCTION NO. 3:

All structural shop drawings for the power distribution tower(s), with all connection details.

### REQUEST FOR PRODUCTION NO. 4:

All field structural inspection reports with the final approval inspection for power distribution tower(s), including all photos with location information confirming proper and adequate power distribution towers and their connections were constructed and completed.

### REQUEST FOR PRODUCTION NO. 5:

All field surveying and structural inspections reports that did confirm the power distribution towers were properly and adequately plumbed, aligned, and laid-out in the proper location with the final approval inspections.

E-Filed

FILED

2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

**REQUEST FOR PRODUCTION NO. 6:**

All power line to power distribution tower arm connection design calculations, including
all required industry design loading combinations with its required applied forces and loads.

**REQUEST FOR PRODUCTION NO. 7:**

All power line to power distribution tower arm connection structural drawings for the
power distribution towers, including all connection details.

**REQUEST FOR PRODUCTION NO. 8:**

All power line to power distribution tower arm connection structural shop drawings,
including all connection details.

**REQUEST FOR PRODUCTION NO. 10:**

All field structural inspection reports with the final approval inspection for all power line
to power distribution tower arm connection, including all connection details.

**REQUEST FOR PRODUCTION NO. 11:**

All photos with location information confirming proper and adequate tower arm connection
construction were completed.

**REQUEST FOR PRODUCTION NO. 12:**

All the Geotech engineering soil report, including soil borings with its allowable soil
bearing capacities and uplift capacities for the subject distribution power towers.

**REQUEST FOR PRODUCTION NO. 13:**

All foundation design structural and Geotech engineering calculations for the towers,
including all required industry design loading combinations with its required applied forces and
loads.

**REQUEST FOR PRODUCTION NO. 14:**

All foundation drawings for the power distribution towers, including foundation details.

**REQUEST FOR PRODUCTION NO. 15:**

All foundation shop drawings for the power distribution towers, including reinforcement
steel and anchorage details

**REQUEST FOR PRODUCTION NO. 16:**

All field surveying, structural and Geotech engineering inspections reports that did
confirm the power distribution towers foundations were properly and adequately plumbed,
aligned, and laid out in the proper location with the final approval inspections.

FILED

2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

**REQUEST FOR PRODUCTION NO. 17:**

All civil design lay-out drawings for the subject power distribution towers.

**REQUEST FOR PRODUCTION NO. 18:**

All surveying drawings for the subject power distribution towers.

**REQUEST FOR PRODUCTION NO. 19:**

All structural reinforcement design calculations for the towers, including all required industry design loading combinations with its required applied forces and loads.

**REQUEST FOR PRODUCTION NO. 20:**

All structural reinforcement drawings for the power distribution towers, including all connection details.

**REQUEST FOR PRODUCTION NO. 21:**

All structural shop reinforcement drawings for the power distribution towers, with all connection details.

**REQUEST FOR PRODUCTION NO. 22:**

All field structural inspection reports with the final approval inspection for power distribution towers, including all photos with location information confirming proper and adequate power distribution towers and their connections were reinforced, constructed, and completed.

**REQUEST FOR PRODUCTION NO. 23:**

All field surveying and structural inspections reports that did confirm the power distribution towers were properly and adequately reinforced, re-plumbed, realigned, and in the proper location with the final approval inspections.

**REQUEST FOR PRODUCTION NO. 24:**

All power line to power distribution tower arm connection reinforcement design calculations, including all required industry design loading combinations with its required applied forces and loads.

**REQUEST FOR PRODUCTION NO. 25:**

All power line to power distribution tower arm connection structural reinforcement drawings for the power distribution towers, including all reinforcement connection details.

**REQUEST FOR PRODUCTION NO. 26:**

All power line to power distribution tower arm connection structural shop reinforcement drawings, including all connection details.

E-Filed

FILED

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

**REQUEST FOR PRODUCTION NO. 27:**

All field structural inspection reports with the final approval inspection for all power line to power distribution tower arm reinforcement connection, including all reinforcement connection details.

**REQUEST FOR PRODUCTION NO. 28:**

All photos with location information confirming proper and adequate tower arm connection reinforcement construction were completed.

**REQUEST FOR PRODUCTION NO. 29:**

All additional Geotech engineering soil report, including soil borings with its allowable soil bearing capacities and uplift capacities for the subject distribution power towers.

**REQUEST FOR PRODUCTION NO. 30:**

All foundation design structural and Geotech engineering reinforcement calculations for the towers, including all required industry design loading combinations with its required applied forces and loads.

**REQUEST FOR PRODUCTION NO. 31:**

All foundation reinforcement drawings for the power distribution towers, including foundation reinforcement details.

**REQUEST FOR PRODUCTION NO. 32:**

All foundation shop reinforcement drawings for the power distribution towers, including reinforcement steel and anchorage reinforcement details

**REQUEST FOR PRODUCTION NO. 33:**

All field surveying, structural and Geotech engineering inspections reports that did confirm the power distribution towers reinforcement foundations were properly and adequately plumbed, aligned, and laid-out in the proper location with the final approval inspections.

**REQUEST FOR PRODUCTION NO. 34:**

All Emails for the last 10 years on the subject power distribution towers structural capacities to withstand the hurricanes.

**REQUEST FOR PRODUCTION NO. 35:**

All emails for the last 10 years on the subject power distribution tower structural capacity inspection and their reports from structural engineering consultants.

E-Filed

FILED

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

**REQUEST FOR PRODUCTION NO. 36:**

All structural inspection reports for the last 10 years on the subject power distribution tower structural capacities and related deterioration of the structures and /or foundations.

**REQUEST FOR PRODUCTION NO. 37:**

All structural testing reports for the last 10 years on the subject power distribution structural deterioration and related structural capacities to be able to withstand the required hurricane winds forces of at least 140 mile an hour.

**REQUEST FOR PRODUCTION NO. 38:**

All petrographic testing reports for the last 10 years on the subject power distribution structural deterioration and related structural capacities to be able to withstand the required hurricane wind forces of at least a hundred miles per hour.

**REQUEST FOR PRODUCTION NO. 39:**

All destructive testing reports for the last 10 years on the subject power distribution structural deterioration and related structure capacities to be able to withstand the required hurricane forces of at least a hundred miles per hour.

**REQUEST FOR PRODUCTION NO. 40:**

All non-destructive testing reports for the last 10 years on the subject power distribution structural deterioration and related structure capacities to be able to withstand the required forces of at least hundred miles an hour.

**REQUEST FOR PRODUCTION NO. 41:**

All non-destructive testing inspection reports for the subject power distribution towers within the last 10 years.

**REQUEST FOR PRODUCTION NO. 42:**

All destructive testing inspection reports for the subject power distribution towers within the last 10 years.

**REQUEST FOR PRODUCTION NO. 43:**

All hurricane and tropical wind modeling of the power distribution towers reports within the last 10 years.

FILED

2021 SEP 30  P 09:40
CIVIL
DISTRICT COURT

**REQUEST FOR PRODUCTION NO. 44:**

All structural engineering consultant emails within the last 10 years to determine if the structural the subject power distribution towers were adequate to safely withstand multiple hurricane winds of at least a hundred forty miles an hour and other tropical wind forces that occurred during time.

**REQUEST FOR PRODUCTION NO. 45:**

All structural engineering consultants' calculations, design analysis and their structural engineering reports of the existing power distribution towers structures, including all tower connections and its arm connections to support the power cables within the last 10 years to determine if the structural capacity was adequate to safely withstand multiple hurricanes of 140 mile an hour winds and other tropical high winds forces.

**REQUEST FOR PRODUCTION NO. 46:**

All documents reviewed or described in your answers to Plaintiffs' first set of Interrogatories.

Respectfully Submitted:

*/s/ Celeste Brustowicz*

Stuart H. Smith (LA#17805)
Barry J. Cooper, Jr. (LA#27202)
Celeste Brustowicz (LA# 16835)
Andrew Jacoby (LA# 32512)
COOPER LAW FIRM, LLC
1525 Religious Street
New Orleans, Louisiana 70130
Phone: 504-399-0009
Fax: 504-309-6989
Email: ajacoby@clfnola.com

**AND**

Jack Harang (LA#15083)
HARANG LAW OFFICES
3500 North Hullen Street
Metairie, Louisiana 70002
Phone: (504) 810-4734
Email: jwharang@gmail.com

**AND**

Juan Lafonta (LA#27541)
JUAN LAFONTA AND ASSOCIATES
6305 Elysian Fields Avenue, Suite 207
New Orleans, LA 70122
Phone: (504) 288-4911
Email: jlafonta@lafontalaw.com

FILED

2021 SEP 30  P 09:40

CIVIL
DISTRICT COURT

**PLEASE SERVE WITH ORIGINAL PETITION AND AMENDED PETITION**

**Entergy Corporation**
*Through its Registered Agent for Service of Process*
Marcus V. Brown
639 Loyola Avenue, 28th Floor
New Orleans, LA 70113


**Entergy New Orleans, LLC**
*Through its Registered Agent for Service of Process*
Marcus V. Brown
639 Loyola Avenue, 28th Floor
New Orleans, LA 70113


**Entergy Louisiana, LLC**
*Through its Register Agent for Service of Process*
John A. Braymer
446 North Boulevard
Baton Rouge, LA 70802