**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ANTHONY J. STEWART, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                        **NO. 21-1834**

**ENTERGY CORP., ET AL.**                         **SECTION "L" (5)**

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Remand to State Court, R. Doc. 11. Defendants filed an opposition, R. Doc. 24, to which Plaintiffs filed a reply, R. Doc. 31. The Court heard oral argument on January 19, 2022. Having considered the briefing and the applicable law, the Court now rules as follows.

### I.      BACKGROUND

Plaintiffs filed a Class Action Petition for Damages in Civil District Court for the Parish of Orleans on September 18, 2021. R. Doc. 1-1. Plaintiffs name Entergy Corporation, Entergy New Orleans, LLC, and Entergy Louisiana, LLC (collectively, "Entergy") as Defendants and claim damages due to power outages after Hurricane Ida, which Plaintiffs allege were caused by Entergy's negligence. *Id.* at 1. Plaintiffs seek damages for emotional distress and mental anguish; loss of habitation and relocation costs; property damage; physical injuries; and the wrongful death of at least ten individuals. *Id.* at 15. Plaintiffs assert that they are all citizens of Louisiana, as are all three Defendants. *Id.* at 2-4.

Defendants removed the case to this Court on October 6, 2021. R. Doc. 1. Defendants' Notice of Removal asserts that this Court has subject-matter jurisdiction, even though Plaintiffs only bring state law negligence claims, because the infrastructure and alleged actions in question

1

are subject to federal regulation. *Id.* at 3-4. Thus, Defendants argue, Plaintiffs' negligence claims depend on questions of federal law because federal regulations establish the standard of care for the relevant activities. *Id.* at 6. Specifically, Defendants cite the Federal Power Act ("FPA"), which gives the Federal Energy Regulatory Commission ("FERC") jurisdiction over all facilities for the transmission of electric energy in interstate commerce. *Id.* at 4. Defendants' Notice of Removal also asserts that this Court has subject-matter jurisdiction under the Class Action Fairness Act (CAFA). *Id.* at 8-12. Defendants further claim that this Court has subject-matter jurisdiction because Plaintiffs' claims implicate core proceedings under the Court's bankruptcy jurisdiction based on Entergy's 2007 bankruptcy. *Id.* at 12-14.

In their Answer, Defendants generally deny Plaintiffs' allegations and assert affirmative defenses including, among others, that Plaintiffs' alleged damages were caused by acts of nature for which Defendants cannot be held liable; that Plaintiffs failed to mitigate their damages; that Plaintiffs' claims are preempted by federal law, including the FPA and the North American Electric Reliability standards adopted by FERC; that Plaintiffs' allegations do not satisfy the requirements under Louisiana or federal law for class certification; and that, to the extent that Plaintiffs' claims are based on alleged actions by Defendants that occurred more than one year before the filing of this suit, the claims are prescribed. R. Doc. 15 at 1-3.

## II.    PENDING MOTION

Plaintiffs have filed a motion to remand this case to state court. R. Doc. 11. Plaintiffs argue (1) that Defendants have not met their burden to establish that this suit raises a federal question; (2) that Plaintiffs' claims fit within exceptions to CAFA; and (3) that Entergy's prior bankruptcy does not trigger federal jurisdiction. *Id.* Plaintiffs also seek fees for wrongful removal and alternatively seek jurisdictional discovery. *Id.*

2

Defendants oppose the motion to remand, reiterating the arguments from their Notice of Removal. R. Doc. 24. Specifically, Defendants argue that federal subject-matter jurisdiction exists because (1) federal law defines the standard of care for Plaintiffs' claims; (2) Plaintiffs have not proved that exceptions to CAFA apply; and (3) Plaintiffs' Petition includes claims against Entergy that were discharged in bankruptcy proceedings in 2007, such that a federal court should determine which claims were previously discharged in bankruptcy to avoid relitigating them. *Id.*

## III.   APPLICABLE LAW

### a.   *Federal Subject-Matter Jurisdiction*

Federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This subject-matter jurisdiction may serve as the basis for a defendant's removal of a lawsuit from state court to federal court. 28 U.S.C. § 1441(a). The removing party bears the burden of demonstrating that a federal court has subject-matter jurisdiction over the suit—that is, that federal law governs the issues involved. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). Moreover, "[t]he removal statute [must] be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). "Only in a 'special and small category' of cases will federal jurisdiction exist when state law creates the cause of action." *Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 721 (5th Cir. 2017) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

Federal subject-matter jurisdiction exists only if a federal question is presented on the face of the plaintiff's well-pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This "well-pleaded complaint" rule "makes the plaintiff the master of the claim," allowing the plaintiff to "avoid federal jurisdiction by exclusive reliance on state law"—even if the plaintiff

"has a choice between federal and state law claims." *Id.*; *Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp.*, 42 F. Supp. 3d 812, 820 (E.D. La. 2014). A suit may not be removed merely because an anticipated defense invokes federal law, including the defense of preemption. *Caterpillar*, 482 U.S. at 393. The exception to this rule is when "an area of state law has been completely pre-empted," in which case "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim." *Id.*

Moreover, a federal court may have subject-matter jurisdiction over a claim initially asserted under state law only if the claim raises a federal issue. *Gunn*, 568 U.S. at 258. There are four requirements for this to be true: "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* The meaning of "substantial" here is that the issue is "important[t] . . . to the federal system as a whole," with "broader significance" to the relevant area of federal law beyond the individual case. *Id.* at 260. However, "the fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). Rather, all four requirements must be satisfied. *Id.*

### b. Consideration of Post-Removal Amendments

Plaintiffs filed a Second Amended Complaint after removal while their motion to remand was pending. However, in deciding the motion to remand, the Court must only consider the complaint (or in this case, petition for damages) as it appeared at the time of removal. *See Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 593 (5th Cir. 2015) (holding that "the relevant record" in deciding a motion to remand is only the plaintiff's original petition because "[j]urisdictional facts are determined at the time of removal . . . "); *In re Carter*, 618 F.2d 1093,

1101 (5th Cir. 1980) ("[i]t is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed.").

### c. *Standard of Care for Electricity Transmission Infrastructure*

The parties dispute the standard of care that applies to claims of negligent operation of electricity transmission infrastructure. Defendants argue that federal regulations set the standard of care for the operation of electricity transmission facilities. Specifically, Defendants argue that FERC standards set the standard of care and preempt state tort law. However, the cases Defendants cite for this argument involve hydroelectric power, a distinct topic governed by specific sections of the FPA. In the area of hydroelectric power, courts have explicitly found that federal law preempts state tort law. *See Simmons v. Sabine River Auth. Louisiana*, 732 F.3d 469, 476 (5th Cir. 2013) (holding that "FERC, not state tort law, must set the appropriate duty of care for *dam operators* [emphasis added].")*; Bonin v. Sabine River Auth. of Texas*, No. 1:17-CV-134, 2018 WL 1190236, at *1 (E.D. Tex. Feb. 8, 2018), *report and recommendation adopted*, No. 1:17-CV-134, 2018 WL 1184454 (E.D. Tex. Mar. 7, 2018), *aff'd sub nom. Bonin v. Sabine River Auth. of Louisiana*, 961 F.3d 381 (5th Cir. 2020) (involving a reservoir governed by FERC's hydroelectric power provisions). Regarding the operation of electricity transmission facilities more generally, aside from hydroelectric power, it is not clear that federal law has established a specific standard of care that preempts state tort law. In fact, savings clauses in the FPA specifically reserve states' authority to ensure the adequacy and safety of electric facilities. *See* 16 U.S.C. § 824o(i)(3) ("Nothing in this section shall be construed to preempt any authority of any State to . . . ensure the safety, adequacy, and reliability of electric service within that State, as long as such action is not inconsistent with any reliability standard . . . ."). Moreover, courts have established that the FPA

does not completely preempt state law in the field of electricity regulation. *See Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 894 (7th Cir. 2013) (collecting cases with this result).

Plaintiffs argue that state tort law and industry standards like the National Electric Safety Code ("NESC") set the standard of care for electricity transmission infrastructure. Plaintiffs cite cases in which courts have applied Louisiana negligence standards and NESC standards to evaluate claims against electric utilities alleging negligent operation of transmission facilities. *See, e.g.*, *Ellender*, 42 F. Supp. 3d at 821 (holding that Louisiana tort law governed plaintiff's negligence claims, even though they "relat[ed] to the regulatory scheme created by the FERC," because there were no "substantial federal questions" involved); *Burley v. Louisiana Power & Light Co.*, 319 So. 2d 334, 339 (La. 1975) (holding that NESC standards were relevant to determining whether an electric utility had breached its duty in a negligence case).

### d. *Class Action Fairness Act*

The Class Action Fairness Act ("CAFA") gives federal courts jurisdiction over class actions in which (1) the amount in controversy is at least five million dollars; (2) there is minimal diversity, meaning "any member of a class of plaintiffs is a citizen of a State different from any defendant"; (3) the number of plaintiffs in the proposed class is at least one hundred; and (4) the primary defendants are not states, state officials, or other government entities. 28 U.S.C. § 1332(d)(2), (5); *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011). However, CAFA also provides exceptions in which it does not apply. These exceptions include the "local controversy" exception and the "home state" exception.

The "local controversy" exception precludes federal jurisdiction over class actions in which (1) "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are

citizens of the State in which the action was originally filed"; (2) at least one defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class" is also a citizen of the state in which the action was originally filed; (3) "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed"; and (4) "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A). The "home state" exception precludes federal jurisdiction over class actions in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

The purpose of these two exceptions is to exclude "a narrow category of truly localized controversies"; the exceptions allow district courts to "ferret out the controversy that uniquely affects a particular locality to the exclusion of all others." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 823 (5th Cir. 2007). District courts are permitted to make "reasonable assumption[s]" and "credible estimates," based on the evidence available, about the citizenship of proposed class members in determining whether a class action fits within CAFA's exceptions. *Id.* at 817, 822. However, the applicability of an exception to CAFA must be shown with "reasonable certainty," and a court faced with uncertainty should rule in favor of exercising jurisdiction. *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 338 (5th Cir. 2016).

### e. Federal Jurisdiction Over Claims Related to Bankruptcy Proceedings

Federal district courts have "original and exclusive jurisdiction of all cases under title 11 [the United States Bankruptcy Code]" and all cases "related to cases under title 11." 28 U.S.C. § 1334(a). Federal jurisdiction may still apply after a bankruptcy proceeding is closed if necessary to enforce rights protected by the Bankruptcy Code. *See In Matter of Galaz*, 841 F.3d 316, 322 (5th Cir. 2016) ("[s]ubject matter jurisdiction remains in the bankruptcy court, even after a bankruptcy case is closed, 'to assure that the rights afforded to a debtor by the Bankruptcy Code are fully vindicated.'") (quoting *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 652 n.4 (Bankr. S.D. Tex. 2007)). Thus, federal subject matter jurisdiction extends to cases that are related to past bankruptcy proceedings.

Cases "related to" a bankruptcy proceeding include "those whose outcome could have any conceivable effect on the estate being administered in bankruptcy." *In re Morrison*, 555 F.3d 473, 479 (5th Cir. 2009). In other words, "[f]or jurisdiction to attach, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).

Moreover, "[t]he court to which [a bankruptcy-related case] is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). This discretionary ability to remand a case is known as "permissive abstention." *See Briese v. Conoco-Phillips Co.*, No. 2:08-CV-1884, 2009 WL 256591, at *4 (W.D. La. Feb. 3, 2009). Factors courts may consider in deciding whether a case warrants permissive abstention include (1) *forum non conveniens*; (2) "a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court"; (3) "a holding that a state court is better able to respond to questions involving state law"; (4) "expertise of the particular court"; (5) "duplicative and uneconomic effort of judicial resources in two forums"; (6) "prejudice to the involuntarily removed parties"; (7) "comity

considerations"; and (8) "a lessened possibility of an inconsistent result." *Browning v. Navarro,* 743 F.2d 1069, 1076 n.21 (5th Cir. 1984).

## IV.   DISCUSSION

### a.   *Federal Question Jurisdiction Based on Federal Regulation of Electricity Infrastructure*

Plaintiffs argue that Defendants have not met their burden to prove the existence of federal question jurisdiction based on federal laws governing electricity infrastructure. R. Doc. 11-2 at 4. Plaintiffs assert that this case does not involve a federal agency's interpretation of a statute; that the existence of federal regulations is insufficient to confer federal jurisdiction without an express grant of federal jurisdiction by Congress; and that federal law itself establishes that state law governs the tort liability of utility providers. *Id.* at 5, 8. Defendants argue that federal question jurisdiction applies because federal law, specifically federal regulation of electricity infrastructure, defines the standard of care for Plaintiffs' negligence claims. R. Doc. 24 at 4. Thus, Defendants argue, resolving a federal issue is necessary to resolving Plaintiffs' claims; a federal issue is actually disputed here; the federal issue is substantial; and federal jurisdiction will not disturb the balance of federal and state judicial roles. *Id.* at 4, 19.

The Court finds that there is not subject matter jurisdiction based on federal regulation of electricity infrastructure. While Defendants argue that FERC regulations set the standard of care in this area and preempt state tort law, Defendants have not cited legislation or case law explicitly establishing that FERC's regulations impose a standard of care that preempts state law. Meanwhile, Plaintiffs have cited cases in which courts, including this Court, have applied state tort law to negligence claims against electricity utilities, indicating that state law can provide a cause of action for such claims.

9

Moreover, under the well-pleaded complaint rule, the Court must give weight to Plaintiffs' choice to bring their claims under state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). It is not apparent from the face of Plaintiffs' Petition that their claims arise under federal law. Thus, the Court must analyze the four factors from *Gunn*—whether "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 568 U.S. at 258. Because Defendants have not established that Plaintiffs' claims necessarily implicate a specific federal law, this analysis fails on the first two factors. It is not clear that a federal issue is necessarily raised or actually disputed, not to mention whether any such federal issue is substantial or capable of resolution without disrupting the federal-state balance of powers. Given that "any doubt about the propriety of removal must be resolved in favor of remand," remand is appropriate under this theory of federal question jurisdiction. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

### b.  Class Action Fairness Act

Plaintiffs argue that removal under CAFA is improper because exceptions to CAFA apply. R. Doc. 11-2 at 14-15. First, Plaintiffs argue that CAFA's "local controversy" exception applies because more than two-thirds of the proposed class members are Louisiana citizens, at least one Defendant is a Louisiana citizen, and the principal injuries alleged occurred in Louisiana. *Id.* at 17-19. Second, Plaintiffs argue that CAFA's "home state" exception applies because two-thirds of the proposed class members and the primary Defendants are Louisiana citizens. *Id.* at 19.[1]

---

[1] Plaintiff's also argue that CAFA's "discretionary jurisdiction" exception applies because greater than one-third but less than two-thirds of proposed class members, along with the primary Defendants, are Louisiana citizens. However, this argument seems to contradict Plaintiffs' arguments about the other two exceptions, which are premised on more than two-thirds of proposed class members being Louisiana citizens, and the Court finds it unconvincing.

Defendants argue that neither CAFA exception applies and that Plaintiffs have not met their burden to prove these exceptions with reasonable certainty. R. Doc. 24 at 23-24.

The Court finds that both CAFA exceptions apply and that CAFA does not provide federal question jurisdiction. The Court is permitted to make "reasonable assumption[s]" and "credible estimates" in determining whether the criteria of the exceptions are satisfied. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 817, 822 (5th Cir. 2007). Using this discretion, the exceptions appear satisfied on their face. The "local controversy" exception is satisfied because (1) greater than two-thirds of the proposed class members are Louisiana citizens; (2) at least one defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class" is a Louisiana citizen (here, all Defendants are Louisiana citizens); (3) "principal injuries resulting from the alleged conduct or any related conduct of each defendant" occurred in Louisiana; and (4) no similar class action on behalf of the same Plaintiffs has been filed in the last three years. 28 U.S.C. § 1332(d)(4)(A). The "home state" exception is also satisfied because at least two-thirds of the proposed Plaintiffs are Louisiana citizens, as are the primary Defendants. 28 U.S.C. § 1332(d)(4)(B).

Both of these conclusions depend on the Court's assumption that at least two-thirds of the proposed class members are Louisiana citizens. Given Plaintiffs' insistence that they only intend to include Louisiana citizens in this lawsuit; the survey conducted by Plaintiffs' counsel to verify the citizenship of the class members; and the fact that the alleged damages occurred in Louisiana and involve Plaintiffs who live and conduct business in Louisiana, the Court finds it reasonable to assume that at least two-thirds of the proposed class members will be Louisiana citizens.

### c.  *Federal Jurisdiction Over Claims Related to Bankruptcy Proceedings*

Plaintiffs argue that their claims do not trigger federal jurisdiction based on bankruptcy law because their claims are not related to Entergy's 2007 bankruptcy proceeding. R. Doc. 11-2 at 20. Plaintiffs further argue that remand is appropriate under the doctrine of permissive abstention because a state court would be better able to resolve Plaintiffs' state law claims and because the Court should give weight to Plaintiffs' choice of forum. *Id.* at 23-24. Defendants argue that Plaintiffs' Petition includes claims that were discharged in Entergy's 2007 bankruptcy proceeding and that a federal court must determine which claims were discharged to prevent relitigation of those claims. R. Doc. 24 at 29. Defendants also argue that the Court should not exercise permissive abstention because Plaintiffs have not specified any prejudice that hearing this case in federal court would cause and litigating this suit in federal court would be as efficient as doing so in state court. *Id.* at 32-33.

The Court finds that there is not federal jurisdiction based on Entergy's prior bankruptcy proceeding. Defendants have not shown that this lawsuit is sufficiently related to the 2007 bankruptcy proceeding to "alter[] the rights, obligations, and choices of action of the debtor" or "have an effect on the administration of the estate." *In re Bass*, 171 F.3d at 1022. Moreover, Plaintiffs' arguments that a state court would be better able to resolve Plaintiffs' state law claims and that forcing Plaintiffs to proceed in federal court against their wishes would be inequitable persuade the Court to exercise permissive abstention. Therefore, the Court exercises permissive abstention to decline jurisdiction on this ground.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Remand to State Court is **GRANTED**. However, Plaintiffs' request for fees is **DENIED**.

12

New Orleans, Louisiana, this 7th day of March, 2022.

UNITED STATES DISTRICT JUDGE